# Houser *versus* Lamont.

1. Bowman bought at an Orphans' Court sale, agreed verbally to let Lamont have the property bought and received part of the purchase-money, but took the deed in his own name as security for the balance. He afterwards obtained the money due him from Houser, to whom he made a deed as security for the money still due by Lamont. *Held*, in an ejectment by Houser, that he could not set up the Statute of Frauds against Lamont.

2. Houser's title was a mortgage and he could use his ejectment only to enforce payment of the money due him.

3. A deed taken as a security for money loaned is but a mortgage and can-

[Houser *v.* Lamont.]

not, by any form of words or other means, be converted into an absolute conveyance.

4. Bowman was-a witness for Lamont and proved his verbal agreement, he thereby waived the statute, and Houser could not contest the fact of the sale.

5. The equity of redemption vested in Bowman for the benefit of Lamont, and Bowman only could contest the title on the ground of the Statute of Frauds.

6. Specific performance of a contract within the Statute of Frauds will be enforced when it is confessed in the answer.

May 16th 1867.    Before WOODWARD, C. J., THOMPSON and AGNEW, JJ.   STRONG and READ, JJ., absent.

Error to the Court of Common Pleas of *Cumberland county.*

This was an action of ejectment brought to August Term 1865, by William C. Houser against Mary Lamont and others for a house and lot in Mechanicsburg.

The plaintiff, to maintain the issue on his part, proved the sale of the property as the estate of Edward Lamont, deceased (who, it was admitted, died seised of it), by his administrator, under an order of the Orphans' Court, for the payment of his debts, to Solomon G. Bowman for $1875.   He also gave in evidence a deed to Bowman for the property, dated March 18th 1862; also a deed dated December 10th 1862 from Bowman to Houser, the plaintiff, for the property, and rested. ·

The defendants then called Bowman, who, under exception both to his competency and the matter offered to be proved by him, testified, that he bought the property at the administrator's sale for $1875; and afterwards, on the request of Mary Lamont, the defendant, who was a sister of the defendant, he made a verbal agreement with her to let her have the property for what he gave for it, he to hold the deed as security; that she paid him $975, and also that he credited her with $74, the balance of the rent of the house, after deducting the interest due him on the unpaid purchase-money, part of the house being occupied by her without payment of rent, and the remainder occupied by other persons who paid rent; that in the fall of 1862, wishing to realize the money due him, he made an arrangement with D. W. Boss to take his claim, telling him that he (Bowman) held the deed as security for the money, and that Boss might hold it in the same way.   When the arrangement was communicated to the defendant, she said she preferred Houser, the plaintiff; that Bowman then gave Houser a deed upon the same condition on which he had held his own, and with the understanding that Houser was to hold the property as he (Bowman) had held it; that the amount then due Bowman of the purchase-money was $825.27, which Houser paid; Houser at the same time gave Miss· Lamont this paper:—

" This is to certify that at the expiration of three years from the

[Houser v. Lamont.]

date hereof, there being no loss to me in the purchasing of the homestead of Edward Lamont from Solomon G. Bowman, there shall then be due and·owing to Mary Lamont the sum of $975, in current bankable paper of the state of Pennsylvania. In witness whereof I have set my hand and seal this 11th December 1862.

$975.                    "W. C. HOUSER, [SEAL.]"

There was much other evidence of a similar kind received under exception, showing repeated recognitions by Houser, by verbal acknowledgments and acts, that he held the property as security for the purchase-money owing by the defendant to Bowman, and advanced by him to Bowman. There was evidence that Houser discouraged Boss from loaning the money; that Houser offered the defendant $1800 for the property, besides the claim he had against her; and that afterwards he said he had had legal advice that he could hold the property as his own.

At the trial the defendant paid into court the amount alleged to be due on account of the purchase-money.

The plaintiff submitted these points, which were answered in the general charge :—

" 1. Taking the whole evidence in the case it does not establish such a resulting trust in favor of Mary Lamont as can be enforced in this action, or as will entitle the defendants to a verdict.

" 2. The whole evidence establishes but an imperfect and incomplete parol agreement for the sale and purchase of the property in dispute which cannot be specifically executed or enforced in this action of ejectment, and therefore the plaintiff holding the legal title to the property is entitled to a verdict."

The defendants' 3d point, which was affirmed, was—

" That if the plaintiff had knowledge of the agreement between S. G. Bowman and Mary Lamont, and a part payment of the purchase-money by her, and he agreed to loan her the balance of money due to said Bowman, and took a conveyance of the property to himself as a security for such loan, such deed, although absolute in its terms, is but a mere security for the money so loaned, and he cannot recover in this suit."

The court (Graham, P. J.), after recapitulating the evidence, charged—

" The evidence of Mr. Bowman shows very clearly that the parol agreement between himself and Mary Lamont for the sale and purchase of the property in dispute, did not establish such a resulting trust in Mary as to justify a decree of specific performance. It is defective in several particulars. Possession was not taken by Miss Lamont under and in pursuance of the agreement. There was no time fixed for the payment of the purchase-money, and Mr. Bowman gave his notes to Miss Lamont for the money paid by her as for a loan, and did not acknowledge it as a pay-

ment of a pre-existing debt. There was no mutuality of obligation, for had Miss Lamont refused to take the property, she held the means of recovering the money paid for which she had the notes of Mr. Bowman. And when Bowman conveyed to Houser it was part of the agreement between them that Houser was to take up Bowman's notes in the hands of Miss Lamont and substitute his own papers, which he did, and handed to Bowman the notes he had given to Miss Lamont. We therefore say to you in the language of plaintiff's 1st point, that the whole evidence in the case does not establish such a resulting trust in favor of Mary Lamont, as will defeat plaintiff's recovery on that ground.

"In answer to plaintiff's 2d point we say that the evidence establishes but an imperfect and incomplete parol agreement, which cannot be specifically executed or enforced in this action of ejectment. But we cannot say to you as requested in the latter part of this point: That because the plaintiff holds the legal title he is entitled to recover. There is another ground of defence upon which you have heard much evidence, and if established clearly and satisfactorily may defeat a recovery. The defendants contend that although the deed from Bowman to Houser is upon its face an absolute conveyance, that it was not so intended either by Houser or Bowman, but was substituted for a mortgage and received by Houser, not as a bonâ fide purchaser of the property, but as a security for the money paid by Houser to Bowman for Mary Lamont. To establish this the evidence of Bowman and the declarations of Houser are relied on. That Houser, when he applied to others to pay the claim of Bowman, requested them to furnish the money for Miss Lamont, and take the deed as security for the money advanced, not to purchase the property from Bowman. [And after he had paid the balance due to Bowman he stated to a number of witnesses, and to some of them after the difficulty about the property occurred, not that he had purchased the property from Bowman, but that he had paid him the balance due, and taken the deed to secure the money advanced by him. If this was the truth of the transaction, if he took the deed from Bowman, not as a bonâ fide purchase, but only to secure the money paid for Miss Lamont, then in law it would be considered in the nature of a mortgage, as a security for money loaned, and the defendant having tendered the money to Houser and deposited it subject to the order of court, this would defeat a recovery, and your verdict under these circumstances ought to be for the defendants."]

The verdict was for the defendants.

The plaintiff removed the case to the Supreme Court, and assigned for error the admission of the evidence excepted to, the answers to the plaintiff's 2d, and defendants' 3d points, and the part of the charge enclosed in brackets.

[Houser v. Lamont.]

*S. Hepburn* and *W. M. Penrose*, for plaintiff in error, cited Barnet *v.* Dougherty, 8 Casey 373; Robertson *v.* Robertson, 9 Watts 41; Myers *v.* Byerly, 9 Wright 372; Boyer *v.* Smith, 3 Watts 449; s. c., 5 Id. 55; Greenlee *v.* Greenlee, 10 Harris 227; Blakeslee *v.* Blakeslee, Id. 243; Act of 22d April 1856, § 6, Purd. 654, pl. 13, Pamph. L. 532; Steere *v.* Steere, 5 Johns. Ch. 11–12; Stewart *v.* Brown, 2 S. & R. 461; 4 Kent's Com. 306; Fox *v.* Heffner, 1 W. & S. 376; Haines *v.* O'Conner, 10 Watts 320; Zentmyer *v.* Mittower, 5 Barr 409–10; Kisler *v.* Kisler, 2 Watts 325; Jackman *v.* Ringland, 4 W. & S. 150; Foote *v.* Colvin, 3 Johns. 222; Jackson *v.* Bateman, 2 Wend. 573; Wilson *v.* Clark, 1 W. & S. 554; Patton *v.* Develin, 2 Phila. Rep. 103; Parrish *v.* Koons, 1 Parsons 91; Todd *v.* Campbell, 8 Casey 255; Bowers *v.* Oyster, 3 Pa. R. 240; Lynch *v.* Cox, 11 Harris 265; Chadwick *v.* Felt, 11 Casey 305; Hill on Trustees 144–147; McKowen *v.* McDonald, 7 Wright 443; Postlethwait *v.* Frease, 7 Casey 474; Edwards *v.* Edwards, 3 Wright 377; Bailey *v.* Boulcott, 4 Russ. 345; Kilpin *v.* Kilpin, 1 M. & K. 537; Tritt *v.* Crotzer, 1 Harris 457; Hill on Trustees 97; 2 Sug. on Vend. 131; Kellum *v.* Smith, 9 Casey 164–5; Kunkle *v.* Wolfersberger, 6 Watts 126.

*J. Ritner, L. Todd, W. H. Miller* and *H. Newsham*, for defendants in error, cited Horn *v.* Pattison, 1 Grant's Cases 304–6; Alden *v.* Grove, 6 Harris 387; Kunkle *v.* Wolfersberger, 6 Watts 126; Reed *v.* Dickey, 1 Id. 152; Todd *v.* Campbell, 8 Casey 255; Hiester *v.* Maderia, 3 W. & S. 387–8; Sheriff *v.* Neal, Id. 534; McBurney *v.* Wellman, 42 Barb. 390; 4 Am. Law Reg. 382; Reitenbaugh *v.* Ludwick, 7 Casey 131.

The opinion of the court was delivered, November 11th 1867, by

AGNEW, J.—The verdict of the jury under the specific instruction of the learned judge of the Common Pleas establishes that the deed from Bowman to Houser was a mortgage and not a sale. The evidence fully sustains the finding that he accepted it as a security for the money he advanced for the benefit of Miss Lamont. The peculiar and governing feature of the case is, that Bowman, who purchased the premises at the Orphans' Court sale and had verbally agreed to sell them to Miss Lamont for the same price he paid, did not deny his sale to her, but recognised and made it the foundation of his conveyance to Houser, and came into court and testified to it. Being examined as a witness on part of Miss Lamont, he testified that he had sold the property to her and she had paid him $975 in money and was credited by him with $74, the surplus of the rents he received over the interest. Wishing to realize his money, he asked a Mr. Boss to advance it for Miss Lamont on the security of the property. But

on informing Miss Lamont of his purpose, she preferred that Mr. Houser should take it, as he was her friend and neighbor. Houser interested himself for her, spoke to a Mr. Dunlap to advance the money for her, but finally concluded to do it himself. In the mean time he had dissuaded Boss from advancing it. Bowman testifies that then he conveyed the property to Houser upon the same condition he held it, which was that Houser should hold it until all the money was paid.   He states that he had paid $1875 for the property, and that the deed was made to Houser on his payment of $825.27, the balance Miss Lamont then owed him. Thus it appears, by the testimony of Bowman himself, the only party who could set up the Statute of Frauds against Miss Lamont, that he not only conceded her title, but conveyed to Houser on the very basis of her ownership, and receiving from Houser the balance only, which she owed him on her purchase.  Bowman did not sell, nor did Houser pay for the value of Miss Lamont's interest in the premises.   Houser afterwards repeatedly admitted the true relation he sustained to the property, to wit, that of a mere lender of money upon its security ; and, indeed, did not deny it until bad feeling sprang up, when, on taking advice, he concluded to set up the Statute of Frauds against her title, and this is now the position taken in the argument.

But Houser does not stand in a position to set up the statute. He is the plaintiff in the ejectment and must stand upon his own title, which is only a mortgage, and the defendant has tendered and brought into court the money due upon it.   He is not an absolute purchaser from Bowman and can use his ejectment only to enforce payment of the money due to him ; but instead of this he seeks to convert his mortgage into an absolute conveyance, by setting up the Statute of Frauds, which Bowman had waived, and thus to hold the property without having paid the major part of its value.   To suffer this would be to permit him to perpetrate a fraud, by obtaining the title on the pretence of a loan of a small part of its value from one who conceded Miss Lamont's title and treated with him expressly upon the basis of her ownership. Bowman did not convey Miss Lamont's interest in the property, except as a security for Houser's advance to pay her debt, and it would be a gross fraud for the latter now to hold that interest under a conveyance made for a different purpose.   Probably nothing is better settled in this state than this ; that a deed taken as a security for the loan of money is but a mortgage, and cannot by any form of words or other means, be converted into an absolute conveyance : Colwell *v.* Woods, 3 Watts 188 ; Kunkle *v.* Wolfersberger, 6 Id. 126 ; Holsey *v.* Trevillo, Id. 407 ; Rankin *v.* Mortimere, 7 Id. 372 ; Hiester *v.* Maderia, 3 W. & S. 384 ; Todd *v.* Campbell, 8 Casey 250 ; Kellum *v.* Smith, 9 Id. 158. Houser being a mere mortgagee by his arrangement with Bow-

man, the equity of redemption vested in Bowman for the benefit of Miss Lamont, and he only could contest her title on the ground of the Statute of Frauds. This he has not done, but he came into court as a witness in her behalf in support of her title by purchase from himself. Here it is that the special feature of the case already noticed comes into play. It is settled equity law that courts of equity will enforce specific performance of a contract within the Statute of Frauds, where it is confessed in the answer of the defendant: 2 Story's Equity, § 755. The reason, says Judge Story, is, that the statute is designed to guard against fraud and perjury, and in such a case there can be no danger of that sort—it is not within the mischief intended to be guarded against by the statute. Acting upon this principle this court held in Christy *v.* Brien, 2 Harris 248, that a parol sale without delivery of possession would be sustained when supported on the trial by the oath of the vendor. "The single question," said Gibson, C. J., "is whether it is taken out of the Statute of Frauds by the acquiescence of the vendors, who are the plaintiffs' witnesses, promoting a recovery by their testimony, instead of opposing it even by a wish. They stand in the attitude of respondents in a bill in equity, confessing the contract and refusing to plead the statute. They not only confess it, but they swear to it." In the Harrisburg Bank *v.* Tyler, 3 W. & S. 373, the same judge held that the declarations of a trustee of an investment being made by him in trust, after his death became evidence of the fact, as the confession of one peculiarly cognisant of it, whose sacrifice by the narration was the equivalent of an oath. Bowman having, therefore, recognised and acted upon the interest of Miss Lamont in the land in the very transaction with Houser, and afterwards coming into court and testifying to it as her witness, it does not lie in the mouth of Houser, a mere mortgagee, to contest the fact. He does not need the Statute of Frauds to protect his mortgage, and will not be suffered to set it up to defeat an interest he never paid for, and which it was the intention of Bowman and himself to preserve to Miss Lamont. To set up the statute, which Bowman refused to plead, would be a fraud, by protecting him in that which he neither bought nor paid for.

These views cover all the assignments of error, and the judgment is, therefore, affirmed.