## JACOB SANKEY ET AL. v. J. M. HAWLEY.

ERROR TO THE COURT OF COMMON PLEAS OF PERRY COUNTY.

Argued May 10, 1887—Decided March 19, 1888.

Since the act of June 8, 1881, P. L. 84, a written defeasance, signed by the grantee but unacknowledged and unrecorded, though contemporaneous with the execution and delivery of a deed absolute on its face, will not be admitted to convert such deed into a mortgage.

Before MERCUR, C. J., GORDON, TRUNKEY, STERRETT, GREEN and CLARK, JJ.; PAXSON J., absent.

No. 314 January Term 1887, Sup. Ct.; court below, No. 24 April Term 1886, C. P.

On February 24, 1886, an action of ejectment was begun in the court below by Joseph M. Hawley against Jacob Sankey and Samuel K. Sankey, trading as Jacob Sankey & Son, for the recovery of a planing mill and appurtenances in Penn township. The plea was not guilty.

At the trial, on January 21, 1887, before CHARLES A. BARNETT, P. J., the facts appeared that on December 17, 1883, Samuel K. Sankey, then the owner of the property in dispute, conveyed the same by an absolute deed in fee to Joseph M. Hawley, for the purpose of securing a loan from the latter of $4,000, taking a separate defeasance of the same date. At the end of two years, Samuel K. Sankey had repaid to Joseph M. Hawley about $1,000 upon his loan, and having become involved, he then conveyed the property to his father, Jacob San-

key, to protect the latter upon indorsements made for him. The father and son, under the name of Jacob Sankey & Son, were in possession of the premises when suit was brought.

The plaintiff's counsel offered the deed of Samuel Sankey and Minerva Sankey, his wife, to Joseph Hawley, dated September 17, 1886, for a tract of land described in the præcipe. This offered for the purpose of showing title as between the parties to this suit.

Defendants' counsel object for the reason that on December 17, 1883, and contemporaneously with the execution of the said deed, and as a part thereof, there was executed between the parties a defeasance in writing, which, stating as it does, a contract between the parties, must be offered with the deed; that the deed represents but a portion of the contract and the plaintiff must offer the whole contract between the parties.

Plaintiff's counsel deny that there is any such thing.

Defendants' counsel further object, for the reason that the defendants now bring the defeasance into court and make tender of the same to the plaintiff and request him to read it as part of his offer, and on refusal to read the same he cannot read the deed, as it constitutes but a portion of the contract.

By the court: The defeasance, being denied, is matter of defence. The deed offered in evidence would be a legitimate offer, and at this stage of the proceedings we think the objection must be overruled.[1]

The possession by the defendants of the property in dispute being admitted, the plaintiff rested.

The defendants then proved the signatures and offered in evidence the following paper:

DUNCANNON, PA., December 17, 1883.

This is to certify that S. K. Sankey and wife have this day deeded me their property, (see deed book Q, vol. 2, page 634, etc., New Bloomfield, Pa.,) for the purpose of securing the loan of four thousand dollars, and I hereby agree to deed the above property back to S. K. Sankey, in fee simple, with all the improvements thereon erected, upon the payment of the four thousand dollars, above referred to. Redeemable within two years. JOSEPH M. HAWLEY.

WITNESS:

WILLIAM BOTHWELL.

To be followed with proof that the four thousand dollars mentioned in the deed and the four thousand dollars mentioned in the said paper are identical and the same. And this for the purpose of creating a defeasance to the deed offered by the plaintiff constituting the same a mortgage and making the said paper a part thereof of said deed.

Plaintiff's counsel objects: Because the defeasance, although in writing, has not been acknowledged and recorded within sixty days from the execution thereof, as provided in the act of June 8, 1881, P. L. 84, which declares: "Be it enacted, that no defeasance to any deed for real estate regular and absolute upon its face, made after the passage of this act, shall have the effect of reducing it to a mortgage, unless the said defeasance is made at the time the deed is made and is in writing, signed, sealed, acknowledged and delivered by the grantee in the deed to the grantor, and is recorded in the office for the recording of deeds and mortgages in the county wherein the said lands are situated, within sixty days from the execution thereof; and such defeasances shall be recorded and indexed as mortgages by the recorder."

By the court: We think the objection is well taken and must be sustained.[2]

Under the direction of the court,[3] the jury rendered a verdict for the plaintiff. Judgment being entered, the defendants took this writ assigning for error:

1. The admission of plaintiff's offer.[1]

2. The refusal of defendants' offer.[2]

3. The direction to find for the plaintiff.[3]

*Mr. W. H. Sponsler*, of *Sponsler & Markel*, for the plaintiffs in error:

Prior to the act of June 8, 1881, P. L. 84, the deed and contemporaneous defeasance constituted a mortgage and made one contract: Friedley v. Hamilton, 17 S. & R. 70. The question is, did this act affect the transaction as between the parties to it?

1. It is contended that the act was intended solely for the protection of purchasers, mortgagees and creditors of one or the other of the parties, and leaves unimpaired the common law right of the parties to contract as they see proper. The

evils to be remedied were, that the grantee in a deed, absolute on its face but subject to a secret defeasance, might impose the lands upon an innocent purchaser or pledge them to a creditor, and then defeat his title or lien by evidence of notice of the defeasance; or, on. the other hand, where neither the deed absolute nor the defeasance were upon record, questions of actual notice would constantly arise, and a creditor of the mortgagor might suffer defeat by evidence of actual notice: Britton's App., 45 Pa. 178. The act of 1881 is essentially a recording act, to the end that no third person should be defeated by a pocket defeasance and parol proof that he knew of it.

2. The act of May 28, 1715, § 8, 1 Sm. L. 95, provides that no deed or mortgage, or defeasible deed in the nature of a mortgage, shall be good and sufficient, etc., unless acknowledged and proved and recorded within six months after the date, etc. This statute is as absolute on its face as the act of 1881. The two are in pari materia and to be construed together. Since the days of Levinz v. Will, 1 Dall. 430, this court has always held that an unrecorded mortgage was good between the parties themselves: Stroud v. Lockart, 4 Dall. 153; Burke v. Allen, 3 Y. 351; Jaques v. Weeks, 7 W. 283; Manf. & M. Bank v. Bank of Penn., 7 W. & S. 335; Britton's App., 45 Pa. 172; Speer v. Evans, 47 Pa. 141; Nice's App., 54 Pa. 200; McLaughlin v. Ihmsen, 85 Pa. 364.

*Mr. Charles H. Smiley* and *Mr. B. F. Junkin*, for the defendant in error:

1. The statute prescribes the character of the evidence which shall be sufficient to convert an absolute deed into a mortgage. It provides a rule of evidence, a mode of proof; a rule for determining the character and effect of a writing, on the principle that when a result is to be produced in a prescribed way, the form prescribed must be followed: Theological Seminary v. Wall, 44.Pa. 353.

2. To adopt the construction contended for would require the court to read into the act a proviso that it should not apply to a vendor or vendee, their heirs or assigns; a substitution of the theories of a court for the express words of the legislature: Pittsburgh v. Kalchthaler, 114 Pa..547. The act

was intended to make a deed absolute on its face just what it purported to be, and to declare what should thereafter constitute a defeasance, in order to remedy a wrong growing out of a doctrine which, to say the least, was not in harmony with the statute of frauds and perjuries.

OPINION, MR. CHIEF JUSTICE GORDON:

The case in hand involves the construction of the act of the 8th of June, 1881, P. L. 84; if, indeed, an act so plain and positive in its terms can be said to need construction.

From the statement of the plaintiffs in error we gather the following history of the case: Samuel K. Sankey was the owner of a lot of ground in Penn township, Perry county, on which was erected a planing mill. On December 17, 1883, he borrowed from Joseph M. Hawley, the plaintiff below, the sum of four thousand dollars, and, as security for the same, executed to Hawley a deed for the premises above mentioned in fee. At the same time there was executed and delivered to Sankey a paper reciting as follows:

DUNCANNON, PA., December 17, 1883.

This is to certify that S. K. Sankey and wife have this day deeded to me their property (see deed book Q, vol. 2, page 634, etc., New Bloomfield, Pa.) for the purpose of securing the loan of four thousand dollars; and I hereby agree to deed the above property back to S. K. Sankey in fee simple with all the improvements thereon erected upon the payment of the four thousand dollars above referred to, redeemable within two years. JOSEPH M. HAWLEY.

Witness: WILLIAM BOTHWELL.

Afterwards Samuel K. Sankey conveyed this property to his father, Jacob Sankey, having in the meantime paid to the plaintiff, on account of said loan, something over one thousand dollars. Subsequently the plaintiff agreed to extend the time of payment of the balance to the 17th of December, 1886, but before the expiration of that time he brought this suit of ejectment.

On the trial the defendants offered the defeasance as above set out, with an offer to prove that the sum mentioned in this paper was.identical with that in the deed. This was objected

to on the part of the plaintiff, and the offers overruled by the court. The evidence of the defendants having been thus rejected, nothing remained but to instruct the jury to find for the plaintiff, which was accordingly done. Assuming the defendants' statement to be correct, as we have done, nothing need be said concerning the equities of the case, for they are all with them; and, previously to the act above mentioned, the plaintiff's recovery must have been limited to a conditional verdict for the balance of the money due him. Nevertheless, under that act we cannot see how the judgment can be impeached.

There is now but one method left by which a deed absolute can be reduced to a mortgage, and that method, in this case, has not been pursued. The defeasance must not only be in writing, and of the same date as that of the deed, but it must also be "signed, sealed, acknowledged and delivered by the grantee in the deed to the grantor;" furthermore, it must be recorded in the office for the recording of deeds and mortgages in the county where the land is situated, within sixty days from the execution thereof. If we are to give effect to this act, an act in no wise ambiguous, it is certain the defeasance offered on part of the defence was properly rejected, for it was neither sealed, acknowledged, nor recorded.

But the learned counsel for the defendants contend, that the act of 1881 is essentially a recording act; and, that, following the decisions made under the statute of the 28th of May, 1715, we should so construe it as not to affect the immediate parties to the transaction, but should confine its operation to purchasers and mortgagees. But should we follow these decisions to this extent we must go still farther and hold. that those having notice are not within the protection of the statute. For, as we said in Britton's Appeal, 45 Pa. 172, per Mr. Justice STRONG, the recording acts have been regarded throughout their whole history, as designed only to furnish protection against those frauds which, without them, would easily be perpetrated by secret conveyances. In other words, they are statutes for the prevention of frauds; hence they furnish no protection to one who purchases land knowing that another has acquired a prior right in that same land. Applying a doctrine of this kind to the act of 1881, and it is effective neither as to parties nor

privies, nor to others having notice.  In other words we would thus repeal the act in its very spirit, and continue to give effect to that which the legislature intended to abolish utterly, the oral defeasance.

We cannot agree thus to defeat the intention of the act.  That intention is not at all obscure, and is not like that found in the act of 1715.  It is true, the design is to prevent frauds, but it also definitely prescribes the process by which this is to be accomplished; not by recording alone, for that is but one of the prescriptions, but by directing how, and how only, a deed absolute shall be reformed.  The question thus becomes one of evidence.  It is proposed to impeach a deed; it is not what it purports to be, a conveyance in fee, but only a mortgage.  Now the question is, how shall this be proved?  The statute answers this by saying you can do this in no other way than by the exhibition of a written defeasance, signed, sealed, acknowledged, delivered and recorded.  In similar cases the courts have always insisted that evidence to impeach a deed shall be clear and indubitable, and as the legislature has seen proper to require, for that purpose, a still higher type of evidence, we cannot take it upon ourselves to destroy the enactment for the purpose only of saving a case supposed to be a hard one.

The judgment is affirmed.