# Solomon Flory v. Joseph Houck and Mary Ellen Houck and J. S. Newhart, Trustee, Appellants.

|186  263|
|f193 450|

*Statute of frauds—Parol antenuptial agreement—Deed.*

An antenuptial agreement of which no note in writing is made until after the marriage, while good between the parties, is not binding on creditors or innocent purchasers intervening.

Although section 4 of the statute 29 Car. 2, which requires agreements

upon consideration of marriage to be in writing, is not in force in Pennsylvania, yet a deed of settlement of land by a husband upon his wife, which at the time of execution would be void against creditors, cannot be sustained by relation .back to an antenuptial agreement in parol.

Settlements made in pursuance of a parol antenuptial contract cannot be sustained as the performance of a moral obligation, or on the ground that the solemnization of marriage is such part performance as equity will consider sufficient to take the case out of the statute of frauds.

Argued March 7, 1898. Appeal, No. 227, Jan. T., 1897, by defendants, from judgment of C. P. Northampton Co., June T., 1896, No. 7, on verdict for plaintiff. Before GREEN, WILLIAMS, McCOLLUM, MITCHELL and DEAN, JJ. Affirmed.

Ejectment for land in the borough of Bangor.

Plaintiff claimed title by virtue of a sheriff's deed in pursuance of a sale of premises made in 1895 under executions against Joseph Houck.

To sustain her title Mary Ellen Houck, the real defendant, offered in evidence two deeds from her husband, Joseph Houck, for the land in controversy, one executed in 1893 for part, the other executed in 1895 for the rest of the property. At the date of these deeds, Joseph Houck was indebted to the plaintiff in a sum greater than the value of the property. The indebtedness commenced in 1884, and judgment was obtained in 1895, upon which the sheriff's sale was made. Mrs. Houck introduced testimony to the effect that in 1882, when she became engaged to Joseph Houck, he verbally agreed that if she would marry him he would give her the land in controversy. They were married October 21, 1882. The various offers of Mrs. Houck to introduce in evidence the deeds to her from her husband, made in consideration of the antenuptial contract, were overruled by the court because they were not based on a valuable consideration. [2–8]

The court gave binding instructions for plaintiff. [1]

Verdict and judgment for plaintiff. Defendants appealed.

*Errors assigned* were (1) above instruction; (2–8) rulings on evidence, quoting the bill of exception.

*Russell C. Stewart*, with him *Robert E. James*, for appellants. —The learned court held that the deeds in suit were not sup-

ported by a valuable consideration. It is not necessary to cite authorities to show that marriage is a valuable consideration for the conveyance of real estate. The courts have gone so far as to hold that even if the man was insolvent at the time of the transfer, yet the conveyance would be a valid one against creditors: 1 Bishop on Married Women, sec. 784; Frank's App., 59 Pa. 190; Jones's App., 62 Pa. 324; Magniac v. Thompson, 7 Peters, 347; Prewit v. Wilson, 103 U. S. 22.

The consideration for the deeds was an antenuptial agreement: 2 Washburn on Real Property (4th ed.), page 437, sec. 6; Stewart's App., 98 Pa. 377; McElfatrick v. Hicks, 21 Pa. 402.

Where no consideration is expressed in a deed of bargain and sale, parol evidence may be given to show that a consideration did pass from the grantee to the grantor: White v. Weeks, 1 P. & W. 486; Jack v. Dougherty, 3 Watts, 151; Buckley's App., 48 Pa. 491; Lewis v. Brewster, 57 Pa. 410.

A parol antenuptial settlement being in consideration of marriage, which is a valuable one, is binding at the expiration of the coverture. No statute requires it to be in writing, where the subject of the contract is the wife's chattels: Gackenbach v. Brouse, 4 W. & S. 547; Earl v. Champion, 65 Pa. 196; Lant's App., 95 Pa. 279; Hunt's App., 100 Pa. 590.

The Statute of Frauds and Perjuries, 29 Charles II, ch. 3, 1676, was never adopted in full in Pennsylvania. That provision of the fourth section which provided that "no action shall be brought whereby to charge any person upon any agreement made upon consideration of marriage, unless the agreement upon which such action shall be brought, or some memorandum or note thereof shall be in writing, signed by the party to be charged therewith" is not in force in Pennsylvania, North Carolina and Louisiana: 8 Am. & Eng. Ency. of Law, 684; Reed on Statute of Frauds, appendix; Reade v. Livingston, 3 Johns. Chan. 482.

As late as the case of Trowell v. Shenton, L. R. 8 Chan. Div. 318, the English courts have been discussing this question, but all the decisions, it will be found, depend on that which is not the law in Pennsylvania.

It is remarkable with how much persistency the attempt has been made even in England and in states where this section is

the law to take cases like ours out of the statute : 1 Cord on Legal and Equitable Rights ·of Married Women, p. 50 ; May on Fraudulent Conveyances, *370.

We find·a case in Pennsylvania where we think the facts and the principle are precisely the same as this case. It is the case of Sackett v. Spencer, 65 Pa. 89. On page 99, Mr. Justice AGNEW states the facts that are similar to our case and applies the principle that the statute of frauds only affects the immediate parties to the contract.

In a voluntary settlement upon the grantor's wife, prior indebtedness is only presumptive, and not exclusive proof of fraud, and this presumption may be explained and rebutted : Lloyd v. Fulton, 91 U. S. 479 ; Schreyer v. Scott, 134 U. S. 405 ; Mullen v. Wilson & Kelly, 44 Pa. 413 ; Townsend v. Maynard, 45 Pa. 198 ; Thompson v. Thompson, 82 Pa. 378.

*H. J. Steele*, for appellee.—The result of the English authorities on this point seems to be that a parol agreement before marriage cannot be set up, as a settlement after marriage, so as to make it a deed for a valuable consideration, and therefore good against creditors or subsequent purchasers : May on Fraudulent Conveyances, * 382.

The case of defendants could not be made out by their own ex parte declarations ; it was pure hearsay so far as concerned Flory : Clever v. Hilberry, 116 Pa. 431 ; Phila. Trust, etc., Co. v. Phila., etc., R. R., 177 Pa. 38.

In order to show that marriage settlements relating to real estate come within the general laws of the state, it is only necessary to refer to Foster v. Whitehill, 2 Yeates, 259 ; Southerland v. Southerland, 5 Bush (Ky.), 591 ; Pickett v. Banks, 11 Smed. & M. (Miss.) 445.

A postnuptial settlement will not support a parol antenuptial agreement so as to take it out of the statute of frauds and make it good as against creditors : Warden v. Jones, 2 DeG. & J. 76 ; Trowell v. Shenton, L. R. 8 Ch. D. 318 ; Martin v. Baird, 175 Pa. 540 ; Dyer's App., 107 Pa. 446 ; Seichrist's App., 66 Pa. 241 ; Barnet v. Dougherty, 32 Pa. 372.

OPINION BY MR. JUSTICE MITCHELL, May 26, 1898 :

The substantial question which must control this case is

whether a deed of settlement of land by a husband upon his wife, which at the time of execution would be void against creditors, can be sustained by relation back to an antenuptial agreement in parol.

This question has been the subject of much discussion and difference of opinion in the English cases. It is agreed that before the statute of frauds such parol agreements were valid and binding, and therefore settlements made in pursuance of them after marriage were good even against existing creditors. And in some of the earlier chancery cases there was an inclination to regard the recital of the prior parol agreement in the deed of settlement as a memorandum in writing such as required by the statute of frauds, and therefore to make the validity of the settlement turn on the presence or absence of such recital in the deed. But in Warden v. Jones, 2 DeG. & J. 76, Lord CRAN-WORTH said: "It cannot be enough merely to say in writing that there was a previous parol agreement. It must be proved that there was such an agreement, and to let in such proof is precisely what the statute meant to forbid." And in Trowell v. Shenton, L. R. 8 Chan. Div. 318, JESSEL, M. R., quoting the foregoing language, said: "In that short passage the Lord Chancellor disposed of all the other authorities." He accordingly held that, as the parol antenuptial agreement could not have been enforced against the husband, his subsequent deed in pursuance of it was voluntary within the statutes of Elizabeth as to fraudulent conveyances, and its validity must be judged by the circumstances at its date. This has been accepted as the settled result of the English authorities: May on Fraudulent Conveyances, * 382.

In 1818, before either of the decisions cited, and while the discussion was still open in England, the question came before Chancellor KENT in the leading case of Reade v. Livingston, 3 Johns. Ch. 481, 8 Am. Dec. 520. After a learned review and consideration of all the authorities and the principles on which they rested, the chancellor reached the same conclusion subsequently arrived at in England, that the parol agreement being invalid, and unenforceable by reason of the statute of frauds, could not support the subsequent settlement. The later New York cases have somewhat modified the chancellor's view that a deed of settlement is fraudulent in law as against existing

debts without regard to their amount, and it appears to be now held that the intent to defraud must be inferable as a fact from the circumstances, including the ratio that the property settled bears to the husband's estate and debts at the time. See Babcock v. Eckler, 24 N. Y. 623, and Cole v. Tyler, 65 N. Y. 78. This latter view has also been taken in other states and may be said now to prevail generally: Sexton v. Wheaton, 1 Am. Lead. Cases, 17; Kehr v. Smith, 20 Wall. 31. But on the main point with which alone we are now concerned, the opinion of KENT in Reade v. Livingston has been generally followed, and is now practically the settled doctrine. "An ante nuptial contract of which no note in writing is made until after the marriage, while good between the parties, is not binding on creditors or innocent purchasers intervening:" 8 Am. & Eng. Ency. of Law, 684, tit. Frauds, Stat. of II, 3. "A post nuptial settlement, if otherwise void as against creditors, will not be saved by the fact that it was made in fulfilment of an oral antenuptial contract; the latter has no effect in removing the voluntary character of the settlement:" 1 Reed on the Statute of Frauds, sec. 183. "As against creditors such a settlement has no force:" Browne on the Stat. of Frauds, sec. 223, note 1 (5th ed. 1895). "A transfer in consideration of a parol antenuptial contract is not within the foregoing exception (of moral obligation) and is merely voluntary:" Bump on Fraudulent Conveyances (4th ed.), sec. 276. "The principle that a conveyance of that character cannot be supported as against creditors who are entitled to impeach it, by proof of an antenuptial verbal agreement, even though such an agreement may be recited in the conveyance, has been recognized by numerous American authorities (citing them) and may now be considered as settled in our jurisprudence:" Throop on Verbal Agreements, sec. 734. See also Story's Equity Jur. sec. 374; 2 Kent's Com.* 173; May on Fraudulent Conveyances, *383.

The results of the decisions thus stated with such unanimity by the text writers are sufficient to settle the general question in the absence of any express adjudication by this Court. Sackett v. Spencer, 65 Pa. 89, relied on by appellant, does not touch the point, for, although the syllabus in the report states the proposition broadly that "where one sells land by parol and afterwards conveys, no one can gainsay this, although he was

not compellable to convey," yet the case really turned on whether the husband ever had any interest in the land which could have availed his creditors. The defendant claimed that the wife furnished the money that paid for the land from her separate estate, and the husband held the title only to secure repayment to her by the real purchaser, Spencer. The jury so found, and in the opinion of this Court it was said that that finding controlled the case.

The English decisions above cited and Reade v. Livingston, supra, arose on that portion of the fourth section of the statute 29 Car. 2, which requires agreements upon consideration of marriage to be in writing, whether relating to real or personal property. This section is not in force in Pennsylvania, but that fact does not affect the present question. The objection here is not to the consideration of marriage, but to the conveyance of land by parol. Contracts of which marriage is the consideration stand in this state upon the same basis as all other contracts and, like all others, when they are to affect the title to land they are required to be in writing, because the subject-matter is within the statute of frauds, and there is nothing in the statute to permit a distinction between one kind of consideration and another. What the statute deals with is not the consideration but the mode of proof.

Nor can settlements in pursuance of such parol contracts be sustained as performance of a moral obligation, or on the ground that the marriage itself is such part performance as equity will consider sufficient to take the case out of the statute. The latter argument, if it were an open question, is not without considerable force, but the controlling view against it was tersely expressed by Lord Chancellor COTTENHAM in Lassence v. Tierney, 1 Mac. & Gord. 551, "there would be an end of the statute . . . . if marriage be part performance every parol contract followed by marriage would be binding." The rule is now universally recognized by the American as well as the English authorities. "Consummation of the marriage is not such part performance as will take the case out of the statute:" 8 Am. & Eng. Ency. of Law, 685, tit. Frauds, Stat. of II. 3, citing the decisions. "When a parol contract is entered into in consideration of marriage the solemnization of the marriage is not such a part performance as will take the case out of the stat-

ute:" Bispham on Equity, sec. 385. And to same effect, Reed on Stat. of Frauds, sec. 182; Throop on Verbal Agreements, sec. 720; May on Fraudulent Conveyances, * 372; Fry on Specific Performance, sec. 593.

Judgment affirmed.