## Jacob Burkhart, Appellant, v. Farmers' Union Association and Fire Insurance Company of Somerset County, Pa.

*Statutes—Act of 1881—Absolute deed as mortgage.*

The Act of June 8, 1881, P. L. 84, like the statute of frauds and perjuries was designed to prevent frauds; it does not prevent those who are parties to a parol contract from treating a deed as a mortgage, or from refusing to avail themselves of its provisions, if they choose to do so, nor does it enable those who were not parties to the parol contract nor interested in the real estate as creditors or purchasers without notice to take advantage of the statute if the original parties to it or their privies refuse to do so.

*Evidence—Insurance—Absolute deed as mortgage.*

In a suit on an insurance policy which provided that the same should become void upon assignment of the property it was error to reject an offer, on the part of the plaintiff, to prove that the deed of transfer was intended only as a mortgage for security, that the debt secured had been paid and a reconveyance made before the fire occurred.

Argued May 1, 1899. Appeal, No. 98, April T., 1899, by plaintiff, from judgment of C. P. Somerset Co., Sept. T., 1895, No. 167, in favor of defendant, on case tried without a jury. Before RICE, P. J., BEAVER, ORLADY, SMITH, W. W. PORTER, W. D. PORTER and BEEBER, JJ. Reversed. Opinion by BEEBER, J. RICE, P. J., dissents. W. D. PORTER, J., concurs in the dissent.

Assumpsit. Before LONGENECKER, P. J.

It appears from the record that the defendant is a mutual insurance company, and in section 13 of its by-laws, printed on the face of its policy, it is provided as follows : " Any property insured by this company which shall be levied on or taken in possession under any proceeding in law, or if an assignment being made or any transfer of such property, this policy shall

be null and void from the date of such levy, assignment or transfer." On December 2, 1892, the plaintiff and his wife by deed absolute on its face transferred the insured premises to Frederick Miller for the consideration of $600, which deed was duly recorded. On September 8, 1893, Miller and wife reconveyed the same premises to plaintiff for the same consideration, by their deed of that date, duly recorded. About July 17, 1894, the two buildings covered by the policy were completely destroyed by a fire originating by accident in the house. The loss exceeded $300, the amount of the policy. Plaintiff resided on the land when the insurance was effected and so continued ever since.

At the trial the court rejected evidence under the following offer:

[Mr. Ruppel: We propose to prove by the witness, and others, that the plaintiff, Jacob Burkhart, was indebted to Frederick Miller in the sum of $100, for which amount Frederick Miller held a note against the witness; that the witness, fearing financial trouble, went to Mr. Miller and told him that he would give him a deed for his property as security for the note of $100; that Mr. Frederick Miller at first was unwilling to consent to that and finally yielded and agreed to accept the deed for the property as security for the note; that they went to John H. Miller, Esq., and had a deed prepared, and it was executed and acknowledged by Burkhart and wife, and that Burkhart, without the knowledge or consent of Frederick Miller, sent the deed to Somerset to be placed on record and. paid for the recording of the deed. This deed was dated December 2, 1892; that at the time this deed was executed it was understood and agreed between the parties to the deed that it was only to be security for this $100; that on the 22d of May, 1893, in pursuance of the verbal agreement, made at the time the deed was executed, Frederick Miller and Jacob Burkhart entered into an agreement in writing, signed in the presence of witnesses, that the property was to be reconveyed upon the payment of the note and its interest; that on or about the 2d day of June, 1893, the witness paid the $100 note to Frederick Miller, and on the 8th day of September, 1893, in pursuance of this arrangement, Frederick Miller reconveyed the property to Jacob Burkhart by deed which was subsequently recorded; that Jacob Burkhart remained in possession

of the property during the whole of the time, claiming it as his own and using the property in every respect as his own, and that Frederick Miller never made any claim to the property and only claimed to hold the property as security for the $100 note; that the property was reconveyed to Jacob Burkhart several months before the fire occurred.

Mr. Hay: We object to the introduction of testimony in explanation of the deed, because the deed itself is the best evidence of the purpose of the parties. We further object to the testimony relative to the article of agreement, inasmuch as it bears a date subsequent to this transaction and is not a part of this transaction. The plaintiff cannot impeach his deed by either the paper of May 22, 1893, or by parol testimony and convert it into a mere security for the loan. It is not evidence.

The Court: We sustain the objection, the evidence is excluded, and note an exception to the plaintiff.] [1]

The case having been heard under the provisions of the Act of Assembly approved April 22, 1874, P. L. 109, the court entered judgment in favor of defendant for costs in accordance with the following opinion:

Two questions of law are presented in this case. [First, whether the plaintiff could, since the passage of the Act of June 8, 1881, P. L. 84, be permitted to convert his deed, absolute on its face, into a mere mortgage, by parol proof, or by a paper executed more than five months after the deed was made and placed on record, such paper not having been either acknowledged or recorded. Secondly, whether, in case the deed be taken as an absolute transfer of the title, the conveyance, in view of the provision in the policy against alienation, rendered the contract of insurance absolutely "null and void, from the date of such . . . . transfer," or whether it merely suspended the operation of the contract until the plaintiff secured a reconveyance and it then again attached and became binding once more on the defendant company.

The first question is, we think, fully met and answered in the negative by the opinion of the Supreme Court in Sankey v. Hawley, 118 Pa. 30.] [2]   It is there said: " There is now but one method left by which a deed absolute can be reduced to a mortgage. The defeasance must not only be in writing, and of the same date as the deed, but it must also be signed, sealed,

acknowledged and delivered by the grantee in the deed to the grantor; furthermore, it must be recorded, . . . . within sixty days from the execution thereof."

The statute established a general rule of evidence, under which the court, in the case just mentioned, held, that when it is proposed to impeach a deed, to show that it is not what it purports to be, a conveyance in fee, but only a mortgage, it can be done in no other way than that pointed out in the act, and this too without reference to the equities. It is contended on behalf of the plaintiff that the act applies only to parties to the conveyance, and that the defendant cannot take advantage of its provisions to exclude the proposed proof, because the parties to the deed admit the validity of the defeasance. We do not so understand the act or the construction given it in the case cited. Regardless of any stipulation against alienation, a contract of insurance is forfeited the moment the insured parts with all interest in the premises insured. It is a contract of indemnity, and when the owner of the property divests himself completely of his title he has no interest left to support it, and it falls.

But here we have an express provision in the policy that it shall become null and void from the date of transfer. The insurer had, therefore, a vital interest in this transaction between Burkhart and Miller, for its further liability was wholly dependent on the fact whether the deed passed the title. Under the ruling in Sankey v. Hawley, supra, the plaintiff could not have insisted on a reconveyance, but he was entirely at the mercy of Miller, who could have retained the premises if so minded. How can it then be urged that the defendant had no interest in the affair and must continue liable, awaiting the pleasure of Miller whether it should be treated as an absolute transfer of the fee, or a mere security? The act of 1881 has no loop-holes for exceptions; it supplies the single way now left for all persons concerned, to modify an absolute deed and reduce it to a mortgage, without regard to their equities or their relation to the instrument. The evidence indicated by the offer was, we think, clearly inadmissible.

Assuming then that the deed must be taken to have conveyed the fee and divested the plaintiff of all insurable interest in the property, did his rights under the policy reattach on September 8, 1893, when he recovered the title?

Numerous cases appear in the books in which insurance has been sustained on an interest less than a legal title in fee, but some interest in the property, legal or equitable, must appear, an interest which may be enforced in law or equity: Ins. Co. v. Turnpike Co., 122 Pa. 37, and the authorities there collected.

"Interest in the property insured is an essential link in the relation of insurance. It is therefore an incident of such relation that it may be dissolved by the insured by parting with his interest. In mutual insurance companies all the insured are members, and all members are insured. He that sells his insured property excludes himself from membership, . . . He is no longer insurer or insured:" Wilson v. Ins. Co., 19 Pa. 372. In such case there is nothing left on which the contract of insurance can operate.

It cannot, therefore, be disputed that the assured must have an insurable interest when the contract is made and at the time of the loss, but the contention here is that it may be in another in the mean time. We are aware that such a doctrine has been announced in some of the text-books, and the same group of cases is always cited to sustain it. We find no decided case in this state holding that view: 1 Wood on Fire Ins. (2d ed.), sec. 354, broadly states the rule as follows: " A sale of the property and a reconveyance to the assured before a loss under the policy reinstates the assured to all his rights under it for the unexpired term," and to sustain his position, cites Worthington v. Bearse, 94 Mass. 382; s. c., 90 Am. Dec. 152; Power v. Ocean Ins. Co., 19 La. R. 28; s. c., 36 Am. Dec. 665; Lane v. Maine, etc., Ins. Co., 12 Me. 44; s. c., 28 Am. Dec. 150; Shearman v. Niagara F. Ins. Co., 46 N. Y. 526; s. c., 7 Am. Rep. 380.

An examination of these cases shows that in Worthington v. Bearse, there was no stipulation against alienation, and as a matter of fact the assured did not effect a sale of the vessel which was the subject of insurance. Chief Justice BIGELOW says, " The alleged sale by the assured of thirteen sixteenths of the vessel covered by the policy was incomplete, and never took effect so as to extinguish his insurable interest therein."

Power v. Ocean Ins. Co. was an insurance of furniture, which the insured afterwards contracted to sell, but the property reverted to the vendor during the term and before the loss,

by the vendee's failure to pay for the same. The court, by MORPHY, J., however, sustains the doctrine for which the plaintiff contends.

Lane v. Marine Ins. Co. was the case of a stock of store goods placed in the possession of another by parol lease during the term of the policy, the insured having resumed possession before the loss and the ownership being in him all the while. The court, speaking by PARRIS, J., held that "the occupation of the store by Dunn, the lessee, who, having no lease in writing, was at most a tenant at will, was not an alienation of the property insured." Of course, if there was no alienation there was no forfeiture. Besides, the assured was engaged in merchandising, buying and selling goods. It was not meant to provide indemnity for any particular goods, or stock of goods; it was the insurance of a fluctuating stock, and furnished indemnity for such portion of the same as might be on hand at any time during the life of the policy when a loss should happen.

In Shearman v. Niagara Falls Ins. Co. the property was transferred, but the policy was renewed within twenty days thereafter and assigned to the vendee, and after notice to the company's agents, the consent of the company was indorsed on the policy itself. The court held that the company thereby waived the forfeiture, and by consenting to the transfer, revived and restored the policy to life.

Hence, it does not seem that the cases relied on fairly sustain the rule for which they were cited.

"The law of the relation between the insurer and insured, is the policy, with all its clauses, conditions and stipulations, by which their mutual rights and liabilities are defined and measured:" Ins. Co. v. Helfenstein, 40 Pa. 289.

In the case at bar the policy stipulates that it "shall be null and void from the date of such . . . . transfer." The plaintiff was bound to know and abide by this provision of the contract. If it became void when he conveyed to Miller, the defendant was at once discharged, at its option, from further liability, and the policy could be revived to life only by its consent. If it became voidable merely, as we assume it did, the same rule holds good, for it was still optional with the defendant whether the relation of insurer and insured should be re-established, after the title came back to the plaintiff.

Such relation could not, and did not, exist while the title was out of him. The general rule is, as already shown, that the relation terminates when the interest of the insured ceases.

A forfeiture may be waived by the insurer when acting on full knowledge, as is abundantly shown by the late case of Light v. Ins. Co., 169 Pa. 310, Highlands v. Ins. Co., 177 Pa. 566, and a multitude of other cases. But, what act of the defendant can be construed into a waiver of the forfeiture in this case? True, three assessments were collected from the plaintiff after the date of his deed to Miller, but the evidence is that they were received without any knowledge whatever of the conveyance, and as soon as that fact became known to the defendant the amount so collected was tendered him. Without the defendant's consent, the policy could not be restored to life. Such consent was not given. As it took both parties to make the contract of insurance originally, so, when it became voidable through a violation of its conditions by the plaintiff, it could not be reclothed with the legal effect and binding obligation of a valid contract, without the assent of both.

March 23, 1898, in accordance with these views, it is now ordered that unless exceptions to the foregoing conclusions of fact and law be filed within thirty days from the filing thereof, in the prothonotary's office, judgment be filed in favor of the defendant and against the plaintiff for the costs properly taxable, as provided in section 2 of the act of April 22, 1874.

Plaintiff appealed.

*Errors assigned* among others were (1) to rulings on evidence, reciting same. (2) To portion of the opinion, reciting same. (4) In ordering judgment to be entered in behalf of the defendant and against the plaintiff for the costs properly taxable.

*W. H. Ruppel*, of *Coffroth & Ruppel*, for appellant.—Suppose the plaintiff would have refused to pay the assessments for fires occurring during the period the title vested in Miller, and still held his policy and his membership in the company, if suit had been brought by the company and both Burkhart and Miller had testified on the trial as they did in this case, would Burkhart have succeeded in his defense? Certainly not. And the

test of membership in a mutual company is whether the insured is bound for his share of the losses which the company must pay: Wilson v. Fire Ins. Co., 19 Pa. 372.

Burkhart had an equity in the property at all times, and having retained the possession of ·the property, so far as this case is concerned he can be treated as a purchaser by parol who has made partial payment of the purchase money, has obtained and retained possession of the land, and is in a position to demand specific performance of contract: Norcross v. Insurance Co., 17 Pa. 429.

The question is not whether Burkhart could have enforced any interest he had in the property, but simply whether he had an interest; and if he had an interest, then that interest was insurable; and if insurable, he was entitled to recover, notwithstanding the title to Miller: Hill v. Cumberland V. M. P. Co., 59 Pa. 474.

But as Burkhart retained an interest in the property, regardless of the title, that interest was insurable, and the mere fact that he placed himself in a position which might possibly have resulted in a loss of the property to him, was not sufficient to defeat the policy until the loss actually occurred: Insurance Co. v. Graybill, 74 Pa. 17.

The only case relied on by the court to sustain the opinion on this branch is that of Sankey v. Hawley, 118 Pa. 30. But that was a case between the parties directly concerned in the transfer of the property, and if the act of 1881 is constitutional, as it was held to be in that case, and is to have any force whatever, of course it would have to apply to the facts in that case, but we contend that only the parties concerned in the transaction are affected by the act, and only those directly interested can claim the protection of the act.

*A. L. G. Hay*, with him *C. W. Walker*, for appellee.—The stipulations contained in the policy of insurance are doubly binding upon the assured, for in this instance, the company being a mutual insurance company, " he becomes a member of the corporation by the act of insurance, and therefore bound to become informed of its rules and regulations: " Hackney v. Allegheny Mut. Ins. Co., 4 Pa. 185; Mitchell v. Lycoming Mut. Ins. Co., 51 Pa. 402.

If the policy became void when Burkhart conveyed to Miller, the defendant was at once discharged from further liability, and the policy, being null and void, could be revived to life only by the consent of the defendant company, which consent was never obtained.

The Supreme Court in Sankey v. Hawley, 118 Pa. 30, said: "There is now but one method left by which a deed absolute can be reduced to a mortgage. The defeasance must not only be in writing, and of the same date as the deed, but it must also be signed, sealed, acknowledged and delivered by the grantee in the deed to the grantor; furthermore, it must be recorded within sixty days from execution thereof. If we are to give effect to this act—an act in no wise ambiguous—it is certain the defeasance offered . . . . was properly rejected, for it was neither sealed, acknowledged nor recorded."

In Molly v. Ulrich, 133 Pa. 41, it is held: "It is immaterial by what form of action it is sought to thus reduce an apparently absolute deed to a mortgage; it is the reduction itself which is forbidden by the act, and this must apply to every means, direct or indirect, by which that result is sought to be reached."

Regardless of any stipulation against alienation, a contract of insurance is forfeited the moment the insured parts with all interest in the premises insured. It is a contract of indemnity, and when the owner of the property divests himself completely of the title he has no interest left to support it and it falls: Wilson v. Trumbull Mut. F. Ins. Co., 19 Pa. 372.

The deed was absolute on its face, and was not reduced to a mortgage or security for a debt, as provided by the act of 1881, and therefore, being an absolute conveyance in fee, the policy, by the very terms of its condition, became null and void on the date of the transfer: State Mutual v. Arthur, 30 Pa. 314, 332.

The policy was rendered nugatory and void by the plaintiff's own act, and he had no claim under it, unless he proved affirmatively that it had been renewed or extended by the consent of the company: Davison v. Ins. Co., 189 Pa. 132.

OPINION BY BEEBER, J., July 28, 1899:

In December, 1891, plaintiff insured his house and barn in the defendant company by a policy to run for five years. Sec-

tion 13 of that policy is as follows: "Any property insured by this company which shall be levied upon or taken into possession under any proceeding in law, or if on an assignment being made or any transfer of such property, this policy shall be null and void from the date of the levy, assignment or transfer." In November of the following year the plaintiff borrowed $100 from one Miller, and gave him a note therefor, and one month later made a deed of the insured property, absolute on its face, to Miller which was recorded on December 5, 1892, but with the understanding and agreement that the deed was to be held as security for the note. In September, 1893, Miller and his wife, the note having been paid, reconveyed the premises to the plaintiff, which deed was duly recorded on the 15th of August, 1894. In July, 1894, the insured property was totally destroyed by fire. During the time from the date of the policy until the destruction of the property by fire the plaintiff remained in possession and control of it and paid three assessments as called by the defendants, two during the time that the deed to Miller was on record, and one assessment a few days after the fire. There was no evidence that the defendant knew of the deed to Miller. After the fire the defendant offered to return to plaintiff the three assessments. When the defendant denied responsibility for the loss on the ground of the deed to Miller being a violation of section 13, quoted above, the plaintiff offered to show that the deed was, by an understanding and agreement between him and Miller, intended as a mortgage to secure the payment of the loan by Miller to the plaintiff. The court below excluded this offer of proof on the ground that it was inadmissible because of the provisions of the Act of June 8, 1881, P. L. 84, and held that the deed was an absolute conveyance in violation of section 13 of the policy, and that the risk did not reattach after the reconveyance by Miller. Judgment was entered for the defendant.

The language of the act of June 8, 1881, is no more general than is that of the statute of frauds and perjuries of March 21, 1772, 1 Sm. L. 389, sec. 1, nor than that of the Act of April 22, 1856, P. L. 532, sec. 4, requiring deeds of trust of land to be in writing. These acts of assembly were passed to prevent the compulsory transfer of title to real estate for breach of contracts unless such contracts were evidenced by writings.

The courts have persistently refused to apply these acts for the benefit of persons not parties to the parol contract, or privies thereto. It has been held that vendors may admit a parol agreement to convey real estate even against those who have been in possession of it for nineteen years and paid taxes on it part of that time: Christy v. Brien, 14 Pa. 248. The same principle was applied against one who held a title from another knowing that he had been holding it for the benefit of a third person, when that other admitted the parol agreement of sale between himself and the third person: Houser v. Lamont, 55 Pa. 311. It was likewise applied against one obtaining a judgment against a debtor a few months after he had conveyed his title to another person in pursuance of a parol contract of sale. Speaking of the debtor in that case, the following language is used: "He stood in the precisely analogous position of an owner who sells land by parol and receives the purchase money but delivers no possession. The title remains in him by virtue of the statute of frauds and perjuries and he cannot be compelled to convey it. But if he choose to fulfil his verbal agreement and actually conveys to the purchaser, who can gainsay it? . . . If Forman" (he was the debtor) " held the land on these terms and conveyed it to Spencer in compliance with the understanding, it is clear there was no fraud on the rights of creditors, whether he had the power to refuse to convey because of the act of 1856 or not. . . . . The question of mortgage or not, or trust or not, concerned Forman alone, so long as the title was uncontrolled by the lien of any judgment. It was in his power, if there were no liens to prevent it, to carry out honestly and in good faith, the agreement under which he took title, without payment of any consideration on his part:" Sackett v. Spencer, 65 Pa. 89. It was again applied against a vendor in favor of a judgment creditor of a vendee, when the vendor gave the vendee a deed in return for a judgment bond for the balance of the purchase money. In this case the following language was used: "When the vendors recognized this estate and possession, by a final conveyance under the contract, they waived the operation of the statute of frauds and gave their assent to the merger of the determinable estate in the fee. The principle of this will be seen in the cases of Christy v. Brien, 14 Pa. 248, Houser v. Lamont, 55 Pa. 311, and later cases recognizing them. A

vendor is not bound to set up a statute of frauds made for his protection, for in such case neither fraud nor perjury need be apprehended:" Appeal of Lloyd, 82 Pa. 485. In our view this act of June 8, 1881, must be treated in the same way. It was passed to prevent a person holding a deed to real estate from being held to be a mortgagee without his consent. We do not think that it was intended to prohibit such a holder of a title from admitting, if he chooses to do so, that in reality he has only a mortgage. Creditors of the holder of such a title and the real owner of the property, or purchasers for value without notice, of course would stand in a different position and be protected by other principles: Flory v. Houck, 186 Pa. 263. The defendant, however, belongs to neither class, for it had no claim against Miller at any time, nor was it an innocent purchaser. The case of Sankey v. Hawley, 118 Pa. 30, relied upon by the court below, is to be read in the light of the facts then before the court. It was a contest between the parties to the contract. The act of June 8, 1881, was said to be designed to prevent frauds. That was also the purpose of the statute of frauds and perjuries, and of the act of April 22, 1856, but as we have shown, this purpose of these two acts did not prevent those who were parties to the parol contract from refusing to avail themselves of the statutes if they choose to do so, nor did it enable those who were not parties to the parol contract, nor interested in the real estate as creditors or purchasers without notice, to take advantage of the statutes if the original parties to it, or their privies, refused to do so. Whilst the court say that this act prescribes a rule of evidence, it must be apparent that it means a rule of evidence to be applied in the contest between the parties to the contract, and as the application of other rules of evidence can be waived by the parties so can this one, except, of course, as to parties interested, as in Flory v. Houck, supra.

If the plaintiff can show that the transaction was as his offer of proof would indicate it to be, it is clear that such a transfer would not be a violation of the 13th section of the policy: Barry v. Hamburg-Bremen Fire Ins. Co., 110 N. Y. 1; Howard v. Ins. Co., 23 Pa. 50; Biddle on Insurance, sec. 213. This being so we conclude that it was error for the court to have excluded this evidence.

Judgment reversed and venire facias de novo awarded.

Rice, P. J., dissenting:

The deed from Burkhart to Miller was regular and absolute on its face. Under the act of 1881 the alleged parol defeasance was ineffectual to reduce it to a mortgage. The grantor could not enforce it specifically, nor could he maintain an action for damages for the breach of the parol agreement. It is "the reduction itself which is forbidden by the act, and this must apply to every means, direct or indirect, by which that result is sought to be reached:" Molly v. Ulrich, 133 Pa. 41. Whether or not the grantee would reconvey the premises and revest in the grantor the estate, depended wholly upon the will of the former. In the meantime the title and the estate, both at law and in equity, were in him. The deed, therefore, was not a mortgage. To hold that it was would be to give effect to that which the statute says shall have no effect, and which, as Chief Justice Gordon said in Sankey v. Hawley, 118 Pa. 30, the legislature intended to "abolish utterly," the oral defeasance. Grant that the execution and delivery of a formal mortgage would not be a breach of the condition of the policy, does it follow that an absolute transfer of the whole title, the estate vesting under it being determinable at the mere will of the grantee (which would have been the entire legal effect of the rejected evidence), is not? Is there anything in the context or in the principle upon which the condition is founded to lead us to suppose that the parties to the policy did not intend to include such a conveyance ? I am unable to find any reasonable ground upon which the policy can be so construed. The deed was what it purported to be, a conveyance in fee simple—a "transfer of such property," within the true spirit and intent, as well as the letter of the condition. The contention that the protection of the policy was merely suspended while the title remained out of Burkhart, and was revived when the premises were reconveyed to him, cannot be sustained. By the express terms of the policy it became "null and void, from the date of such . . . . assignment or transfer." This was the contract of the parties, and, in the absence of proof of waiver or grounds of estoppel, the law of the relation of insurer and insured. That terminated when the condition was broken by the voluntary act of the insured, and could not be restored without the express or implied assent of the insurer. All of the questions raised

280, (1899).]                    Dissenting Opinion.

are, in my judgment, fully and satisfactorily answered in the opinion filed in the court below, and I would affirm the judgment for the reasons there given.

W. D. PORTER, J., concurs in the foregoing dissent.