## John P. P. Huston *v.* John Regn, Appellant.

*Mortgage—Defeasance—Recording—Act of June 8, 1881.*

The Act of June 8, 1881. P. L. 84, relating to the recording of defeasances, applies to deeds for real estate only.

H. assigned to R. his interest in several decedents' estates for $500, and R. gave H. an agreement dated the next day to reassign within one year for $530. Both papers were delivered contemporaneously on the receipt by H. of $500 from R. *Held*, that the two papers, together, constituted a mortgage of plaintiff's interest in said estates, but that the transaction was not within the terms of the Act of June 8, 1881, P. L. 84, because it had not been shown that the interest conveyed by the assignment included real estate.

Argued Jan. 7, 1898. Appeal, No. 187, Jan. T., 1897, by defendant, from decree of C. P. No. 1, Phila. Co., June T., 1896, No. 802, on bill in equity. Before Sterrett, C. J., Green, McCollum, Mitchell, Dean and Fell, JJ. Affirmed.

Bill in equity to compel the reassignment of an interest in a decedent's estate.

From the record it appeared that the controversy grew out of an assignment of an interest in the estates of several decedents, and an agreement to reassign such interest.

The two papers were as follows:

### ASSIGNMENT.

" Know all Men by these Presents, That I, James P. Perot Huston, of the city of Philadelphia, for and in consideration of the sum of five hundred dollars, lawful money of the United States of America, unto me in hand well and truly paid by John Regn, of the same place, gentleman, the receipt whereof is hereby acknowledged, do grant, bargain, sell, alien, enfeoff, release, confirm, assign, transfer and set over, and by these presents have granted, bargained, sold, aliened, enfeoffed, released, confirmed, assigned, transferred and set over unto the said John Regn, his heirs, executors, administrators and assigns, all my estate, right, title and interest of whatsoever kind or nature, either at law or in equity, of, in and to the estates of my mother, Sarah Huston, deceased, my grandfather, William S. Perot,

deceased, and my grandmother, Mary W. Perot, deceased, and to all and every part of each and every of said estates, and the proceeds thereof, to have and to hold unto the said John Regn, his heirs, executors, administrators and assigns from henceforth, to his and their own proper use and benefit forever.

" And I do hereby nominate, constitute and appoint the said John Regn my true and lawful attorney, irrevocable, with full power of substitution of other attorneys under him, and give and grant to him, his executors, administrators and assigns, full power and authority in my name, or in the name of my executors or executor, administrators or administrator, or the survivors or survivor of them, to ask, demand, sue for, recover and receive the said right, title, interest, legacies, gifts and estate hereinbefore particularly set forth, from the executors, administrators or trustees of any and all of said estates, or the survivors and survivor of them, or from any other executor, administrator or person whomsoever, and to compound, acquit, release and discharge the same, I hereby ratifying and confirming all and whatsoever he or they shall lawfully do or cause to be done in or about the premises.

" In Witness Whereof, I have hereunto set my hand and seal this twenty-ninth day of July, 1895.

                      " (Signed) JAMES P. P. HUSTON."

                      AGREEMENT TO REASSIGN.

" Know all Men by these Presents, That I, John Regn, of the city of Philadelphia, gentleman, for and in consideration of the sum of one dollar, lawful money of the United States of America, unto me in hand well and truly paid by James P. Perot Huston, of the said city, also gentleman, the receipt whereof is hereby acknowledged, do hereby covenant, promise and agree to and with the said James P. Perot Huston, that I will, at any time within one year from the date hereof, sign, seal, execute and deliver unto him a deed of assignment for all my right, title and interest in the estates of Sarah Huston, deceased; William S. Perot, deceased, and Mary W. Perot, deceased, upon the payment to me by him of the sum of five hundred and thirty dollars.

" In Witness Whereof, I have hereunto set my hand and seal this thirtieth day of July, A. D. 1895.

                      " (Signed) JOHN REGN.   [SEAL.] "

BEITLER, J., found the facts to be as follows:

The testimony taken shows that about April, 1895, the plaintiff applied to the law firm of Thomas J. Martin & Bro. (composed of Thomas J. Martin, Jr., Esq., and Frank P. Martin, Esq.), to secure a loan on his interest in his mother's and grandfather's estate; that the firm made efforts to secure the loan but for a time without any success. In July, 1895, the defendant did pay to the plaintiff $300. What this payment was for is a disputed question. The plaintiff says that it was a loan. The defendant says it was paid for the purchase of the interest. Mr. Frank P. Martin says that early in July, 1895, he informed the plaintiff that he could not secure the loan and that subsequently the plaintiff and defendant concluded their negotiations (having met in the firm's office) and that the defendant acted in the matter upon information as to the quantity and value of the plaintiff's interest in the estate referred to— given to him by the firm. The papers that were finally executed show that whatever the parties called the transaction it was in effect a pledge of the plaintiff's interest in his grandfather's, his grandmother's and his mother's estate, for while he by one paper assigned this interest to the defendant, the latter agreed to reassign at any time within a year upon payment to him of $530, which is the consideration named in the assignment, and with one year's legal interest added. The plaintiff received but $300. The defendant, however, paid $173.30 to Thomas J. Martin & Bro. for attorney fees and expenses.

The plaintiff admits that he agreed, when seeking the loan, to pay a bonus of $200, and both Frank P. Martin and the defendant testify that the plaintiff agreed to pay all the legal expenses, and was told that they would be $200. Just what these services were worth was not shown, but it appeared that to ascertain what estate the plaintiff had and its value, involved the study of three wills, the examination of the title to three or four properties and an ascertainment of their value, besides inquiry as to the value of his personal estate in the trustee's hands. The plaintiff has requested the trial judge to find as matter of fact that $50.00 would be a proper sum to charge for legal fees, expenses and costs. No testimony has been produced to show that such would be a proper charge. The trial judge, upon the testimony before him, is unable to find that the sum

paid by the defendant to Thomas J. Martin & Bro., that is, $173.20, is an unreasonable or excessive charge. Besides, the plaintiff seemed willing to pay $200 to secure the loan. While he terms it a " bonus " it seems fair to conclude that he expected to have to pay $200, and it would seem to be corroboration of the defendant's statement that the plaintiff knew the expenses would be $200.

The conclusions reached on the testimony are:

1. That the assignment by James P. P. Huston to John Regn, bearing date the 29th day of July, A. D. 1895, for a consideration of $500, and agreement by John Regn to reassign to James P. P. Huston for a consideration of $530, bearing date the 30th day of July, A. D. 1895, within one year from that date, both delivered contemporaneously on receipt of check for $300, together constitute a mortgage of the interests of James P. P. Huston in the said estates of Sarah Huston, deceased, William S. Perot, deceased, and Mary W. Perot, deceased.

2. That the plaintiff owes the defendant $300, and $173.30 with interest on the $473.30 since July 29, 1895.

### CONCLUSIONS OF LAW.

The defendant contends that he is the absolute owner of the plaintiff's interest in the three estates referred to and denies that the paper executed by him, agreeing to reconvey within one year upon payment of $530, has any validity or binding effect. As authority he cites the act of June 8, 1881, which provided:

" No defeasance to any deed for real estate, regular and absolute upon its face, made after the passage of this act, shall have the effect of reducing it to a mortgage, unless the said defeasance is made at the time the deed is made and is in writing, signed, sealed, acknowledged and delivered by the grantee in the deed to the grantor, and is recorded in the office for the recording of deeds and mortgages in the county wherein the lands are situated within sixty days from the execution thereof; and such defeasance shall be recorded and indexed as mortgage by the recorder."

This, however, seems to have been a thought suggested by the learned counsel representing the defendant, and even with him would appear to be of recent birth, for in the answer filed

the defendant admits the execution of the agreement to reassign, and adds that he has always been ready and willing to comply with the terms of the agreement. The answer was filed September    , 1896. There was then no idea in the mind of client or counsel that the agreement to reassign was not valid and binding. In Brown v. Beecher, 120 Pa. 590, the Supreme Court held that the act applies to deeds for real estate only. The paper executed by the plaintiff is in form an assignment. It is so called in the acknowledgment. It assigns all the plaintiff's "right, title and interest of whatsoever kind or nature, either at law or in equity of, in and to the estate of " the plaintiff's mother, grandmother and grandfather, "and to all and every part of each and every of said estates and the proceeds thereof." It likewise constitutes the defendant the plaintiff's attorney to recover and receive the said " right, title, interest, legacies, gifts, and estates." Whether there is a power of sale in the grandfather's will with directions to convert the real estate into money; whether there is any of the mother's estate in real estate now ; whether the interest conveyed by the assignment is an interest in real estate even in part, the defendants have not shown, and the trial judge feels justified in holding, therefore, that the assignment was not " deed for real estate," and that therefore the act of 1881 does not apply.

This conclusion is strengthened by the acts of the parties. If the interest conveyed was real estate, the Messrs. Martin would have prepared a deed describing the real estate ; they would have left out much that was put in the assignment, and (this seems conclusive on the subject) they would have seen to it that the agreement to reassign was drawn and executed, acknowledged and recorded in strict compliance with the act of 1881. Not to have done so would have been an act of chicanery on their part so utterly at variance with their duty to the plaintiff, by whom they were being well paid for their professional services that it would be a serious reflection upon them as members of the bar to sustain the defendant's present contention. The plaintiff should therefore have a reassignment upon payment by him of the sum borrowed and the expenses incurred by the defendant, and as he did not tender the defendant the full amount which he should have tendered, he should pay the costs.

It is therefore ordered and decreed that, upon payment by the plaintiff to the defendant of the sum of $473.30, with interest thereon since July 29, 1895, and the costs of this suit, that the defendant execute and deliver to the plaintiff a full and ample assignment of the interests and estates assigned to him by the assignment of July 29, 1895.

On exception the court entered the following modified decree:

It is therefore ordered and decreed that upon payment by the plaintiff to the defendant of the sum of $473.30, with interest thereon since July 29, 1895, and the costs of suit within thirty days from this date that the defendant execute and deliver to the plaintiff a full and ample reassignment of the interests assigned to the defendant by the assignment of July 29, 1895. If the plaintiff shall not within thirty days from this date pay the said sum and interest and costs then the bill to be dismissed.

*Error assigned* among others was the decree of the court.

*John A. Bickel,* with him *Thomas J. Martin, Jr.,* for appellant.—Since the act of June 8, 1881, a written defeasance, signed by the grantee, not acknowledged and unrecorded, though contemporaneous with the execution and delivery of a deed absolute on its face, will not be admitted to convert such deed into a mortgage : Sankey v. Hawley, 118 Pa. 30.

*Joseph T. Bunting,* for appellee.—In Brown v. Beecher, 120 Pa. 590, the Supreme Court of Pennsylvania held, at page 608, that this act of June 8, 1881, relating to and defining defeasances, etc., applies to deeds for real estate only.

PER CURIAM, January 17, 1898:

There is no substantial error, either in the findings of fact or in the legal conclusions on which the modified decree in this case is predicated; nor is there anything in either of the specifications of error that requires discussion.

For reasons given by the learned judge who presided at the hearing in the common pleas the decree is affirmed and appeal dismissed at defendant's costs.