## William Goodwin, Appellant, *v.* T. Reed McMinn.

*Trusts and trustees—Ex maleficio—Parol agreement—Fraud.*

A creditor who obtains by solicitations from his debtor real estate worth much more than his debt, upon an express parol promise to reconvey when his debt is discharged, and then, after paying himself by the proceeds of a sale of a part of the property, deliberately violates his promise to reconvey the remainder, is guilty of a manifest fraud, and stands in the position of a trustee ex maleficio to the debtor, or to a person claiming title by a sheriff's sale under an execution against the debtor. The parol agreement does not turn the absolute deed into a mortgage within the meaning of the act of June 8, 1881, which declares that a defeasance to an absolute deed must be in writing and be recorded, but a bill in equity by a purchase of the property at sheriff's sale will lie for a reconveyance.

Argued Oct. 19, 1899. Appeal, No. 131, Oct. T., 1899, by plaintiff, from decree of C. P. Greene Co., No. 18, in equity. Before STERRETT, C. J., GREEN, McCOLLUM, MITCHELL, DEAN, FELL and BROWN, JJ. Reversed.

Bill in equity for conveyance of land.

The substance of the bill and the grounds for demurrer are stated in the opinion of the Supreme Court.

The court in an opinion by CRAWFORD, P. J., sustained the demurrer and dismissed the bill. Plaintiff appealed.

*Error assigned* was the decree of the court.

*James Inghram*, with him *John S. Carter*, for appellant.— The plaintiff's bill was not filed for the purpose of "reducing the deeds to a mortgage," nor was such allegation made therein, but it was filed for and the prayer was that the deeds be canceled because they were procured by fraud. That such a bill can be maintained in equity, and that upon proof the deeds may be canceled by decree, there is no doubt, and there should, at this day, be no diversity of opinion: Adams's Equity (8th ed.), 175; Bispham's Prin. of Eq. (4th ed.) 292; Schmidt v. Baizley, 184 Pa. 527.

*A. F. Silveus*, with him *S. M. Smith* and *R. F. Downey*, for appellee.—The deed to McMinn and Haver was a deed with a parol defeasance, and was delivered to them as a security or mortgage, and the object of this proceeding is to reduce the deed absolute on its face to a mortgage: Act of June 8, 1881, P. L. 84; Sankey v. Hawley, 118 Pa. 30; Molly v. Ulrich, 133 Pa. 41; Fuller v. East End Homestead Loan Co., 157 Pa. 646.

Plaintiff has no standing to be heard: Fidler v. John, 178 Pa. 112; Barclay's App., 93 Pa. 50; Long's App., 92 Pa. 180; Messimer's App., 92 Pa. 168.

Equity will not interfere if the complainant's title be denied, until he has vindicated it at law: Washburn's App., 105 Pa. 482; Triscuit's App., 13 W. N. C. 57; Spangelberger v. Leger, 2 Kulp, 29; Stewart's App., 78 Pa. 88; Mirkil v. Morgan, 134 Pa. 144; Harper's App., 109 Pa. 14; Penna. Canal Co. v. Middletown, etc., Turnpike Co., 11 Pa. C. C. R. 582; Tillmes v. Marsh, 67 Pa. 507; Richard's App., 100 Pa. 52; North Penna. Coal Co. v. Snowden, 42 Pa. 488.

OPINION BY MR. JUSTICE DEAN, December 30, 1899:

Alva C. Shaw was a merchant doing business in Jefferson borough, Greene county. He became embarrassed financially. McMinn, this defendant, and Jacob Haver were his sureties on two notes, each in sum of $200. McMinn was also his surety on other notes. Shaw owned a small farm and four houses and lots near Jefferson. To pay himself as surety on the notes McMinn induced Shaw to convey to him all of his property. The deeds on their face were absolute. McMinn sold, excluding a house and lot on Washington street, more than suf-

ficient to pay his liabilities for Shaw in full. John McGovern, who was also surety for Shaw and paid the debt, brought suit and recovered judgment, issued execution, and levied upon the Washington street lot. All Shaw's interest was sold and purchased at sheriff's sale by Goodwin, this plaintiff, and deed duly acknowledged. The consideration was $1,000. Goodwin then brought this bill, praying that the deed from Shaw to McMinn for this particular property be declared void, and that McMinn be directed to deliver it up for cancelation, on the ground as set forth in the bill: that the deed for the several tracts had been made on the express understanding and agreement between Shaw and McMinn to reimburse McMinn in his liability for Shaw's debts, and the agreement of McMinn to reconvey the property to Shaw if he did not have to pay the debts, or such part of the property as was not necessary to that end; that in fact at the very time the deed was made, McMinn had already in his hands, of Shaw's money, a large part of the sum necessary to relieve him from loss, and soon afterwards received much more than sufficient to discharge any contingent liability on part of Shaw to him. Nevertheless McMinn fraudulently refused to reconvey the property to Shaw, in violation of his agreement. The plaintiff being the purchaser of Shaw's interest in the land at sheriff's sale, claimed, that he stood in the place of Shaw, with the right to assert his title.

The defendant demurred to the bill for the reason, that, as the possession of defendant under a legal title was conceded, an assertion of plaintiff's right must be at law in ejectment, which would be a full and adequate remedy, and that in fact, the records of the court of common pleas exhibited an ejectment between the same parties, then pending; further, that the bill is in substance an ejectment bill and should be dismissed.

The court below, being of opinion, that on the facts set out and on the terms of the parol agreement between Shaw and McMinn the plaintiff in effect sought to turn the deed, absolute on its face, into a mortgage by setting up a parol unrecorded defeasance, held that the act of June 8, 1881, was an effectual bar to a decree in plaintiff's favor; because, that act declared that no defeasance to any deed absolute on its face should have the effect of reducing it to a mortgage unless the defeasance

was in writing, delivered to the grantor and recorded within sixty days from the execution of the deed. The court therefore sustained the demurrer and dismissed the bill. From that decree we have this appeal.

It seems to us the court below misapprehended the substance of plaintiff's bill. He did not set up an agreement as a defeasance to the deed, and which had the effect of changing its absolute character into a conditional one, for the security of a debt or a contingent future liability. The allegation was that the deed was procured by fraud, in that, at the time it was given a large part of McMinn's liability had already been discharged by money then in his hands, and this unknown to Shaw, and further, that a fraudulent use was being made of the conveyance, in that while given to relieve McMinn of loss on account of his suretyship, yet when that obligation was wholly discharged by the sale of the other property he refused to reconvey this particular property to Shaw or the vendee at sheriff's sale. We take the fact averred, which technically the demurrer admits, that the conveyance was for the payment of a debt which was paid by the grantee from other sales and other money, and then the unsold property was to be reconveyed to the grantor; and that the conveyance was upon a special trust and confidence reposed by the grantor in the grantee. This, plainly, upon the refusal of the grantee to reconvey after the purpose of the conveyance had been accomplished, put the latter in the situation of a trustee ex maleficio, of which trust a court of equity will take jurisdiction. While the legal title and possession remain in the grantee it is difficult if not impossible to reach the equity of the case in an action at law. The refusal to reconvey is a palpable fraud, not only upon the grantor, but indirectly upon other creditors than defendant. He obtains by solicitation from the debtor property worth three times his own debt, upon an express promise to reconvey when his own liability is discharged, and then, after selling part of the property, deliberately violates his promise ; this is a manifest fraud ; the transaction leaves the legal title in the wrongdoer, but the equitable is clearly in the grantor; that equitable title passes by the sheriff's sale to this plaintiff ; he stands in Shaw's shoes. A trust is where the legal estate is in one and the equitable estate in another. If the intention of McMinn, as averred is to

convert the property to his own use, when nothing remains in him but the naked legal title, without a spark of beneficial interest, it is a fraud upon Shaw and a chancellor must direct a reconveyance to him in whom is the complete equitable interest. " In all cases of fraud, and where transactions have been carried on mala fide, there is a resulting trust by operation of law; but unless there be something in the transaction more than is implied from the violation of a parol agreement equity will not decree the purchaser to be a trustee:" McCulloch v. Cowher, 5 W. & S. 427. As is said by AGNEW, J., in Seichrist's App., 66 Pa. 237: "We are of opinion this case falls within the proviso to the 4th section of the act of 1856, that where any conveyance shall be made of any lands or tenements by which a trust or confidence shall arise by implication or construction of law, such trust or confidence shall be of like force and effect as if the act had not been passed. Among the trusts thus resulting from the operation of law are those arising from the fraud of him who has the title. Although no one can be compelled to part with his own title, by force of a mere verbal bargain, yet when he procures a title from another which he could not have obtained except by a confidence reposed in him, the case is different. There, if he abuse the confidence reposed in him, he is converted into a trustee ex maleficio. The statute which was intended to prevent frauds turns against him as the perpetrator of a fraud. It is not therefore the fact that the bargain by which he obtained the title is verbal that governs the case, but the fact that he procured the title to be made to him in confidence, the breach of which is fraudulent and in bad faith." These principles cover the whole ground set out in the averments of this bill.

As to the act of 1881 which declares a defeasance to an absolute deed must be in writing and be recorded, the provisions of the act have no application here. The parol agreement does not turn the absolute deed into a mortgage; it was absolute on its face, and intended so to be, that McMinn might with facility sell and convey the land for the payment of Shaw's debt; when that end was reached, McMinn's title ended and Shaw was entitled to a reconveyance of what was not appropriated under the agreement. It was not a deed which was to become absolute upon a condition subsequent, the failure of

Shaw to pay McMinn's debt; it constituted itself payment of the debt; the sales by McMinn were to determine whether the property was sufficient or whether it exceeded in value the debts.

We pass no opinion on the truth of the averments; they must be sustained by evidence which is clear and precise. All we say is that plaintiff is entitled to a hearing.

The demurrer is overruled, the bill reinstated and defendant is ordered to answer over.