BYRON T. BABBITT, Trustee, Respondent, v. MARTIN KELLEY, Appellant.

St. Louis Court of Appeals, November 11, 1902.

1. **Principal and Agent:** KNOWLEDGE OF AGENT. Knowledge by an agent of a creditor or the agent's reasonable cause to believe a debtor is insolvent when he does a preferential act in favor of the agent's principal, affects the latter.

2. **Bankruptcy:** PREFERENCE GIVEN CREDITOR: CHATTEL MORTGAGE: LIMITATION RUNS FROM TIME RECORD OF INSTRUMENT OR MORTGAGE. By the Bankruptcy Act of 1898 a preference given a creditor by chattel mortgage or other instrument that is the subject of record, is voidable if the instrument is filed for record within four months of the beginning of bankruptcy proceedings though it was executed earlier; the limitation runs from the date of record and not that of execution.

Vol 96 mo app—34.

Appeal from St. Louis City Circuit Court.—*Hon. Franklin Ferris,* Judge.

AFFIRMED.

*Jamison & Thomas* for appellant.

(1) "If a bankrupt shall have given a preference within four months before the filing of a petition, or after the filing of the petition and before the adjudication, and the person receiving it, or to be benefited thereby, or his agent acting therein, shall have reasonable cause to believe that it was intended thereby to give a preference, it shall be voidable by the trustee and he may recover the property or its value from such person." Bankruptcy Act (1898), sec. 60. (2) "The exchange of securities within four months is not a fraudulent preference." . . . "The reason is that the exchange takes nothing away from the other creditors." Sawyer v. Turpin, 91 U. S. 114; Player v. Lippincott, 4 Dillon 125. (3) In order to constitute a preference under the Bankrupt Act, the debtor must have done some act to facilitate the proceedings. Wilson v. Bank, 17 Wallace 488; Bank v. Warren, 96 U. S. 539; Sage v. Wyncoop, 104 U. S. 319; Louicheim v. Henzey, 86 Pa. St. 353.

*E. M. Grossman* for respondent.

(1) Failure to record a chattel mortgage avoids it as to all persons, except parties thereto, unless possession of the mortgaged property be delivered. R. S., 1899, sec. 3404; Williams v. Kirk, 68 Mo. App. 457; Dry Goods Co. v. Brown, 73 Mo. App. 245; Lowrence v. Brown, 82 Mo. App. 125; Bank v. Buck, 123 Mo. 141; Bank v. Powers, 134 Mo. 432; Mayer v. O'Neill, 151 Mo. 67; Hillard v. Cagle, 46 Miss. 338. (2) The receipt by a creditor of any property, including cash, from an insolvent debtor directly or indirectly, out of the debtor's assets, or the filing or record-

ing of a mortgage on the property of the debtor, within four months before a petition in bankruptcy has been filed by such insolvent debtor or against him, or after the filing of such petition and before the adjudication in bankruptcy, with the knowledge on the part of such creditor, or his agent, of the debtor's insolvent condition, or with such information in possession of such creditor or his agent as would put a prudent man on his inquiry, is a preference under the Bankruptcy Act, and can be avoided, and the money obtained thereby recovered, by the trustee in bankruptcy of such insolvent debtor. Bankruptcy Act, 1898, secs. 3, 60, 70; Brandenburg on Bankruptcy (2 Ed.), pp. 559, 563.

GOODE, J.—Edward H. Weiler formerly conducted a saloon in the city of St. Louis, on the stock and fixtures of which he executed a mortgage May 16, 1900, to secure notes for five hundred dollars, to the defendant Kelly from whom he had borrowed that sum of money. Said mortgage was not filed for record until April 27, 1901, Weiler in the meantime remaining in possession of the saloon and property and continuing the business, but making payments from time to time on the notes, until by April 19, 1901, he had reduced the balance due to one hundred and seventy-five dollars. In the latter month his license was revoked and he sold the saloon stock and fixtures to one Marshall, making an agreement at the time with the latter that he (Marshall) should pay the balance on the mortgage notes.

The mortgage was kept from record at the request of Weiler for fear it would injure his credit, Kelly granting him that indulgence, as he swears, without any knowledge that Weiler was either insolvent or in debt. But when he learned his license had been revoked he put it to record and placed his notes in the hands of an attorney to be collected; but swears that even then he knew nothing about Weiler's insolvency or that he was threatened with bankruptcy proceedings.

On May 9, 1901, creditors of Weiler filed a petition in bankruptcy against him and on June 10 he was adjudged a bankrupt.

Marshall conducted the saloon until June 4 when he had the stock and fixtures auctioned off and the balance due Kelly on the notes was paid out of the proceeds.

Byron T. Babbitt, the plaintiff, was appointed trustee of the bankrupt estate, and as such brought this action to recover from Kelly the said balance of one hundred and seventy-five dollars, on the ground that Kelly had knowingly benefited by an act of preference on the part of Weiler the bankrupt, within four months of the initiation of proceedings against him.

In defense it is maintained:

First. That the four months' limit ran from the date of the mortgage in May, 1900, and not from the date of its filing or the payment of the balance of one hundred and seventy-five dollars due on it.

Second. That there was no proof of credit being extended to Weiler after the execution of the mortgage and while it was unrecorded.

Third. That Kelly had no knowledge of Weiler's insolvency, either at the date of the mortgage or of its filing, nor any reasonable cause to believe he intended to give a preference while insolvent.

Fourth. That Kelly was not paid out of the bankrupt estate, nor in fact by Weiler, but by Marshall.

At the conclusion of the testimony the court gave two declarations of law at the instance of the plaintiff which are said to be erroneous:

"1. The court declares the law to be that if the chattel mortgage given by Weiler to Kelly was withheld from record in order that it might not injure the credit of Weiler, then as to all creditors subsequent to the date of execution of the said mortgage, said mortgage is void, and the proceeds received by said Kelly under said mortgage can be recovered by the plaintiff herein.

"2. If the court, sitting as a jury, finds and be-

lieves from the evidence that Edward H. Weiler was, on the twenty-seventh day of April, 1901, insolvent within the meaning of the Bankruptcy Act; and if the court further finds that the defendant, Martin Kelly, or his agent Vette, at the time the chattel mortgage made to him by Weiler was recorded, *i. e.,* April 27, 1901, had knowledge of said Weiler's insolvency or had such information concerning Weiler's financial condition as would have put a man of ordinary prudence on inquiry concerning said Weiler's solvency; and if the court further finds that thereafter and within four months from the date of the filing of the petition in bankruptcy, said Kelly received $175 in satisfaction of the said mortgage, then the verdict and judgment of the court must be for the plaintiff.''

It should be stated that the loan transaction between Kelly and Weiler was conducted by one Vette, who also attended to the collection of whatever payments were made and repeatedly dunned Weiler for the balance due on the notes, but was told by the latter several times that he was short of cash and could not make payments as demanded.

Subsequent to the execution of Kelly's mortgage and before it was recorded, two or three other mortgages were put on the saloon property by Weiler, and the latter's assets were scheduled at two hundred and fifty dollars, while he owed six thousand dollars.

1. Appellant makes the point that there was no evidence of credit being extended to Weiler while his mortgage was unrecorded and therefore no basis for the first declaration; and the absence of evidence is in a measure conceded by respondent's counsel, who affirms, however, that the declaration was harmless, which is true as the judgment is secure on another ground; but we must dissent from the position of counsel as to the total lack of evidence on that issue, for we find, as above stated, that two or three chattel mortgages of a later date than Kelly's were filed against the property during the period his mortgage was un-

recorded, though those lien creditors may not have been injured by that circumstance. Weiler's indebtedness was enormous in comparison with his assets, but as a list of his debts is not in the bill of exceptions, there is no showing as to when all of them were contracted. But enough appears to convince us the first declaration of law was not inappropriate, since by the statute as construed in the Missouri decisions, the unrecorded mortgage was void as to subsequent creditors. R. S. 1899, sec. 3404; Dry Goods Co. v. Brown, 73 Mo. App. (K. C.) 245; Williams v. Kirk, 68 Mo. App. (K. C.) 457; Bank v. Buck, 123 Mo. 141. A trustee in bankruptcy may sue to set aside a conveyance made by a bankrupt in actual fraud of creditors earlier than four months prior to the institution of the proceedings in bankruptcy and in fact is only barred by the limitation period which would bar the creditors whom he represents. In re Mullen, 101 Fed. Rep. 413.

2. Unquestionably there was evidence to prove Vette, who was acting as Kelly's agent in the transactions with Weiler, knew the latter was insolvent before the mortgage was put to record or the balance due on it collected, which balance was really paid by Marshall for Weiler, by the latter's direction, and diminished the assets available to other creditors. Under the Bankrupt Act of 1898, an agent's knowledge that a preference is intended affects his principal. U. S. Bankrupt Law, sec. 60b; Rogers v. Palmer, 102 U. S. 263; Sage v. Wyncoop, 104 U. S. 319. To invalidate a preference the party benefited or his agent must have reasonable cause to believe, not that the debtor is insolvent, but that a preference is intended, the act says; but this involves knowledge by the preferred creditor or his agent, or reasonable cause to believe, that the debtor is insolvent at the time of the alleged preferential act; for the essence of a preference denounced by the bankrupt law is that it is given by an insolvent debtor. Collier on Bankruptcy, 343; In re Eggert, 98 Fed. Rep. 843, 102 Fed. Rep. 735.

3. There was evidence to show Kelly himself pos-

sessed knowledge or had reasonable cause to believe Weiler was insolvent when he put his mortgage to record, and if placing it for record constituted a preferential act within the meaning of the bankrupt law, instead of the execution of the instrument, the judgment by which the proceeds of the preference were recovered by the respondent as trustee for Weiler's creditors was right.

The crucial question in the case is, when was the preference given? Was it when the mortgage was executed and therefore more than four months before the filing of the petition in bankruptcy against Weiler or when the mortgage was put to record and therefore within four months of the filing of the petition? If we had any doubt about this question we should feel bound to accept the answer the Federal courts have made. Their decisions settle the construction to be given to the bankrupt law and there has been a direct adjudication of the point, holding that the filing for record of a chattel mortgage, or other instrument which is a subject of record, is the date from which runs the four months' limitation of the right of a trustee to proceed for an annulment of a preference (In re Klingman, 101 Fed. Rep. 691), and this ruling was followed by the Kansas City Court of Appeals in Landis v. McDonald, 88 Mo. App. 335.

The reasons which induced the adoption of that construction of the Bankrupt Act of 1898 are clearly explained in the opinions in those cases, to which we will simply refer instead of treating the subject at length.

It follows that the second declaration of law given by the court was sound doctrine, and as we think there was evidence on which to base both declarations, the judgment is affirmed. *Bland, P. J.,* and *Barclay, J.,* concur.