## ENGLISH v. ROSS.

(District Court, M. D. Pennsylvania. September 20, 1905.)

No. 1.

1. BANKRUPTCY—VOIDABLE PREFERENCE—KNOWLEDGE OF CREDITOR.

Where all the facts known to a creditor pointed to his debtor being insolvent, which was the fact, the creditor is chargeable with knowledge that a transfer to him as security of practically all of the debtor's available property, within four months prior to the latter's bankruptcy, was intended to give him a preference, and such transfer is voidable, under Bankr. Act July 1, 1898, c. 541, § 60b, 30 Stat. 562 [U. S. Comp. St. 1901, p. 3445.]

[Ed. Note.—For cases in point, see vol. 6, Cent. Dig. Bankruptcy, §§ 255, 257.]

2. SAME—PREFERENCE EFFECTED BY DEED INTENDED AS SECURITY—ACT PA. JUNE 8, 1881—DEEDS AND MORTGAGES—RECORDING ACTS OF PENNSYLVANIA—RIGHT OF TRUSTEE TO QUESTION TRANSACTION—SECTION 60a BANKR. ACT 1898 AS AMENDED FEBRUARY 5, 1903—DATE AS OF WHICH TRANSFER TO BE ADJUDGED A PREFERENCE.

Conveyances of real estate absolute on their face were executed by the debtor to his creditor, the one April 21, 1894, and the other July 30, 1900. Both were admittedly given as security for existing and subsequently accruing indebtedness, and with other securities, also transferred to the creditor, constituted practically all the available property of the debtor. The conveyances were not recorded until June 2, 1903, at which time the grantor was insolvent, and must have been known to have been so by such creditor. Four days later involuntary proceedings in bankruptcy were instituted against the grantor, and he was subsequently adjudicated a bankrupt. On a bill by the trustee to have the conveyances set aside as a preference, *held*:

(a) That, although given as security merely, the Pennsylvania act of June 8, 1881 (P. L. 84), prohibiting a deed absolute on its face from being reduced to a mortgage, except by a defeasance in writing, signed, sealed, and delivered by the grantor at the time and recorded within 60 days, prevented the said conveyances from being treated as mortgages good only as such, according to the local law, from the date of record; and that the bill could not proceed upon that ground.

(b) That this, however, was not material: (1) The act of 1881 not preventing the court from inquiring into the real character of the transaction, and treating the deeds, according to the fact, as intended for security only, constituting a turning over of his property by the bankrupt to one of his creditors, in preference to, and serious prejudice of the others; (2) and the trustee having no greater right to call in question the conveyances, for want of recording, as mortgages than as deeds, the right to do so in either case being dependent on the construction to be given

to the provisions of the bankruptcy act with regard to voidable preferences.

(c) That, having regard to the state law solely, the deeds were effective to convey title, whatever their purpose, without being recorded; the Pennsylvania act of May 19, 1893 (P. L. 108), by which the subject of recording is regulated, requiring it only in order to preserve the rights of the grantee as to subsequent purchases or mortgages for value without notice, of whom the trustee of the bankrupt was not one.

(d) That the right of the trustee to set aside the conveyance was to be determined by reference to section 60a of the bankruptcy act (Act July 1, 1898, 30 Stat. 562, c. 541 [U. S. Comp. St. 1901, p. 3445]), as amended by Act Feb. 5, 1903, c. 487, § 13, 32 Stat. 799 [U. S. Comp. St. Supp. 1905, p. 689], according to the proper construction of which a deed by which a transfer of a bankrupt's property is effected, under which no possession is taken, is to be judged on the question of preference by the date when it is put on record, regardless of the date of delivery; and that, tested by this, the conveyance in question could not stand.

(e) That by the amendment of February 5, 1903 to section 60a of the bankruptcy act this section was intended to be brought into substantial accord with section 3, cls. "a" and "b" (30 Stat. 546 [U. S. Comp. St. 1901, p. 3422]); that which as a preference, is made an act of bankruptcy by the one being intended to be made voidable as such at the instance of the trustee by the other, the superadded condition being present that the person who has received the preference had reasonable cause to believe that a preference was intended.

**8. SAME—TRANSFER OF PROPERTY BY BANKRUPT—SECURITY OR SALE.**

An assignment by an insolvent within four months prior to his bankruptcy of a judgment in his favor from which an appeal was pending, followed by a sale of goods to him by the assignee from time to time, which were charged to his account, although absolute on its face, *held* to have been by way of security only for the account, leaving the assignee accountable to the bankrupt's trustee for the excess of its proceeds.

In Equity. On bill, answer, and proofs.

C. A. Van Wormer, for plaintiff.
John T. Lenahan and M. J. Martin, for defendant.

ARCHBALD, District Judge. This is a bill brought to avoid as a preference certain transfers of property, and to have certain others decreed to stand as security only for the advances upon them. The material facts with respect to the former are not in controversy. On April 21, 1894, John J. Mangan, the present bankrupt, conveyed to the defendant, K. J. Ross, by deed in fee simple, two lots of land of which he was the owner, one in Pittston, Pa., and the other in Hughestown, of the combined value of about $4,000. Mangan was engaged at the time, and up to his bankruptcy, in the general retail grocery business, and the defendant, Ross, was a jobber in feed and provisions; and this conveyance, according to the undisputed evidence, was given to secure the latter for what Mangan then owed him for goods bought, amounting to $573.54, and for indorsements at bank, with which the defendant has accommodated him, the extent of which is not given. It was also to stand as security for any future indebtedness or obligations of like character. Six years later, on July 30, 1900, the indebtedness on book account having increased to $3,487.68, and the indorsed paper to some $3,500 more, Mangan, with his six brothers and sisters, as additional security, conveyed to the defendant two other pieces of real

estate in Pittston, which they had together inherited from their mother, of the value of about $7,000. The deed in this case also was in fee simple, but, the same as the other, was admittedly intended as security only, and a writing expressive of that fact, and including the previous deed, agreeing to reconvey on payment of the indebtedness, was signed and acknowledged by the defendant, but for some reason was never delivered. Neither of these deeds was recorded at the time, nor was possession taken under them; Mangan and the others continuing to exercise unquestioned ownership over the property, collecting the rents, paying taxes, and seeing to the insurance. On June 2, 1903, however, Mangan being in manifest financial difficulty, the defendant put his deeds on record, and on June 6th, four days later, proceedings in bankruptcy were begun by creditors, under which Mangan in due course was adjudicated a bankrupt; the plaintiff, English, being subsequently elected and qualified as trustee. The present bill is based upon the contention that, as against subsequent bankruptcy, the defendant's deeds are to be judged as of the date of record only, and, being given for the purpose of securing the indebtedness of the bankrupt, who was hopelessly insolvent, and whose estate will pay but a few cents on the dollar, that they constitute a preference, which the defendant had reasonable cause to believe was intended, and which, being within the four-months period, is therefore voidable at the instance of the trustee.

There can be no question as to these conveyances working a preference, if they are sustained. It is true that the interest of the bankrupt disposed of by the second was only an undivided seventh, and therefore worth but about $1,000. But the property covered by the first deed was worth some $4,000, making $5,000 for the two together; and the defendant, in addition, held 10 shares of the Citizens' Electric Illuminating stock, which had been assigned to him as collateral, of the value of from $1,200 to $1,500 more, out of which, even though the indebtedness of the bankrupt to the company should be taken by virtue of the lien which is claimed upon it—some $300 or $400, according to the statement of counsel—it still leaves $1,000 to go into the general account. The defendant, therefore, got $6,000 of security from the bankrupt, as against $7,000 of indebtedness and assumed obligations; whereas, to pay other creditors, by whom claims have been proved to the extent of over $42,000, there are perhaps $2,000 or $3,000 of available assets in sight. Neither can there be any serious controversy, treating the transaction as of the date when the defendant put his deeds on record, that he had reasonable cause to believe that a preference was intended. It was certainly manifest that Mangan had reached the end of his resources, which the defendant could but know, and evidently did. His account for goods purchased, which was but $573 in April, 1894, when the first deed was given, had grown to $3,487 in July, 1900, at the time of the second, and had been somewhat further increased in the three years following. For upwards of three months, although repeatedly dunned to do so, he had not been able to pay a dollar upon it, and kept putting the defendant off with promises. So far had things gone that the latter part of May, when

he came and tried to get a small bill of goods, he was refused; and not until he had agreed to assign certain judgments which he held against Plains township to the amount of $567, was he accommodated, and then only to the extent of $275. At this very time, whether the defendant knew it or not, he was under execution, and was sold out at constable's sale the next day after the deeds in question were put on record. The defendant held his electric light stock, on which he was owing for the very light that had been furnished him, which the defendant, as the president of the company, must have known. The first deed covered all the real estate which he owned by himself, except a lot in Exeter township, which no one seems to consider of any account; and the second, that which he had inherited in common with his brothers and sisters. And the fact that they had joined with him in these conveyances was evidence that he had been compelled to call on his family for assistance, and that, three years before, in order to keep going. Monopolizing, as he thus did, all the available assets of the bankrupt, the defendant could not but know that he was getting more than his share if Mangan proved insolvent, to which everything pointed, and of which he was therefore affected with notice. In re Ridge Avenue Bank (D. C.) 138 Fed. 951. Of this the defendant took the risk, and, now that it has turned against him, he cannot be heard to say that he did not know that he was getting a preference, or that one was contemplated. Where that is the necessary result of a transaction, it is conclusively presumed to have been intended. Western Tie & Timber Co. v. Brown, 196 U. S. 502, 25 Sup. Ct. 339, 49 L. Ed. 571. And upon the most cursory consideration it was patent that that would be the outcome here.

The case turns, therefore, on whether the transfer of property effected by the deeds is to be judged, as of the dates when they were, respectively, executed, or as of June 2, 1903, when they were left for record; the latter only being within the four-months period prior to bankruptcy necessary to make out a preference. Under the bill as originally filed, the attempt was made to have these conveyances treated as mortgages, according to which it was assumed that they would take effect from the date of record only, and the way thus be made easy to set them aside. This lost sight, however, of the real issue. For, except as affected by section 67a, Bankr. Act July 1, 1898, c. 541, 30 Stat. 564, U. S. Comp. St. 1901, p. 3449 (In re Lukens [D. C.] 138 Fed. 188; In re Pekin Plow Co., 7 Am. Bankr. Rep. 369, 112 Fed. 308, 50 C. C. A. 257; In re Thorp, 12 Am. Bankr. Rep. 195, 130 Fed. 371. Contra, In re New York Economical Printing Co., 6 Am. Bankr. Rep. 615, 110 Fed. 514, 49 C. C. A. 133), if the trustee has no right to call in question the conveyances, for want of recording, as deeds, neither has he as mortgages, and whether filed before or after bankruptcy. But, without stopping over that, the agreement by which the deeds here would be made out to be mortgages being in parol, the act of June 8, 1881 (P. L. [Pa.] 84), was seen to preclude it (Sankey v. Hawley, 118 Pa. 30, 13 Atl. 208; Molly v. Ulrich, 133 Pa. 41, 19 Atl. 305; Grove v. Kase, 195 Pa. 325, 45 Atl. 1054; Crotzer v. Bitten-

bender, 199 Pa. 504, 49 Atl. 266; Lohrer v. Russell, 207 Pa. 105, 56 Atl. 333), and the present position was then taken. The act of 1881 is still urged as standing in the way; but, nothwithstanding the strictness with which it has been enforced in cases coming within its terms, it has never been carried beyond them. Brown v. Beecher, 120 Pa. 590, 15 Atl. 608; Huston v. Regn, 184 Pa. 419, 39 Atl. 208; Goodwin v. McMinn, 193 Pa. 646, 44 Atl. 1094, 74 Am. St. Rep. 703; Moran v. Munhall, 204 Pa. 242, 53 Atl. 1094; Burkhart v. Insurance Co., 11 Pa. Super. Ct. 280; Bank of Commerce v. Peace, 27 Pa. Super. Ct. 643. It simply prohibits a deed absolute on its face from being reduced to a mortgage, except by a defeasance in writing, simultaneously signed, sealed, acknowledged, and delivered by the grantee, and recorded within 60 days. This does not, however, change the inherent character of the transaction, nor prevent the courts from inquiring into it and treating it accordingly. In the present instance there is no dispute as to what it was. The deeds, though absolute, were admittedly intended as security only; and, whether the defendant is willing to recognize the confidence or not, it was for this purpose, and this alone, as he himself acknowledges, that the property was put in his hands. The indebtedness of the bankrupt, present and prospective, no doubt, was the consideration; but there was no sale. The defendant did not buy the property, in other words, agreeing to take it and cancel his debt. If it were to his advantage, and the transfer was decided not to be a preference, there would be nothing to prevent him, after realizing on his security, from coming in on the estate for anything which remained due. Looking, therefore, at the transaction as it was, it was nothing more nor less than a turning over by the bankrupt of his property to the defendant, to an extent that would enable him to make by far the greater part, if not all, of the indebtedness due him, to the serious prejudice of other creditors. Judging of this as of the date when the deeds were put on record, the bankrupt being then insolvent, it constituted a preference, and the defendant, having reasonable cause to believe that it was intended, must give it up. It is not material that the bankrupt himself could not get back the property. Neither could he in the case of any preference. But that does not stand in the way of the trustee.

Having sole regard to the state law, it must be confessed that the deeds in controversy were effective to convey title, whatever their purpose, without being recorded; and that, if this is controlling, it is, to say the least, doubtful whether they can be disturbed. It is only qualifiedly here that recording can be said to be required. Originally under the act of May 28, 1715 (1 Smith's Laws, p. 95), except as to mortgages, it was permissive merely. Powers v. McFerran, 2 Serg. & R. 44; Keller v. Nutz, 5 Serg. & R. 246. But by the act of May 18, 1775 (1 Smith's Laws, p. 422), it was made compulsory, within six months, if the grantee would preserve his title as against subsequent purchasers or mortgagees without notice for value. The subject at present is regulated by act of May 19, 1893 (P. L. 108), an amendment to the act of 1775; the only change effected by it, as declared in Davey v. Ruffell, 162 Pa. 443, 29 Atl. 894, being to reduce the time within which a purchaser must record his deed to be protected from 6 months to 90

days. It is, however, there additionally provided that all deeds there-after executed, which shall not be so recorded, shall be void, not only as to subsequent purchasers and mortgagees for value, but also as to "any creditor of the grantor or bargainor." This provision waś held to be inoperative in Davey v. Ruffell, 162 Pa. 443, 29 Atl. 894, no ar-rangement being made by which it could be worked out; and the act, as it is said, is to be read as if the reference to creditors was not in it. It is a question whether this reason does not disappear, in the face of the bankruptcy act, by which the trustee is invested with the rights, not merely of the bankrupt, but of creditors also (section 70a, cls. 4, 5; section 70e; section 60b; section 67, cls. a, c, e, f). In re Pekin Plow Co., 7 Am. Bankr. Rep. 369, 112 Fed. 308, 50 C. C. A. 257; In re Thorp, 12 Bankr. Rep. 195, 130 Fed. 371; Chesapeake Shoe Co. v. Seldner, 122 Fed. 593, 58 C. C. A. 261; Casey v. Caravoc, 96 U. S. 467, 488, 24 L. Ed. 779); proceedings in bankruptcy being held to be, in effect, an attachment and sequestration of the property of the bank-rupt for their benefit (Bank v. Sherman, 101 U. S. 403, 25 L. Ed. 866; Mueller v. Nugent, 184 U. S. 1, 22 Sup. Ct. 269, 46 L. Ed 405; In re Pekin Plow Co., 7 Am. Bankr. Rep. 369, 112 Fed. 308, 50 C. C. A. 257; In re Moody, 12 Am. Bankr. Rep. 718, 131 Fed. 525). The position of the trustee in this respect is clearly distinguish-able from that of an assignee for the benefit of creditors under the state law who represents only the assignor, and takes subject to existing equities against him (Mellon's Appeal, 32 Pa. 121, 129), or an assignee under the bankruptcy act of 1867, by reason of the new provisions which have been introduced (In re Pekin Plow Co., 7 Am. Bankr. Rep. 369, 112 Fed. 308, 50 C. C. A. 257; In re Thorp, 12 Am. Bankr. Rep. 195, 130 Fed. 371). Neither does it meet the case in hand to say that an outstanding deed, whatever its age, takes effect as against subsequently acquired interests, in any event from the date of record (Fries v. Null, 154 Pa. 573, 26 Atl. 554; 158 Pa. 15, 27 Atl. 867), and that the defendant's deeds were at least good from that time. If not good until then, being thus brought down to within four months of bankruptcy, they cannot escape the charge of being a preference, if otherwise liable to it, which the bankruptcy act, after all, must decide.

But, however the deeds would be regarded under ordinary cir-cumstances, and without passing upon the standing of the trustee with reference to the state law, the case turns, in my judgment, on the con-struction to be given to that provision of the bankruptcy act, and others by which it is subtended, which, treating of voidable preferences oc-curring within four months of bankruptcy, prescribes:

"Where the preference consists in a transfer, such period of four months shall not expire until four months after the date of the recording or regis-tering of the transfer if by law such recording or registering is required."

This was introduced by the amendatory act of 1903, and was manifestly intended (Collier [5th Ed.] 453) to overcome the decisions under the law as it previously stood (In re Wright, 2 Am. Bankr. Rep. 364, 96 Fed. 187; In re Mersman, 7 Am. Bankr. Rep. 46; Dean v. Plane, 195 Ill. 495, 63 N. E. 274) by which it was held, the same as under the act of 1867 (Clark v. Iselin, 21 Wall. 360, 375, 22 L. Ed. 568;

Sleek v. Turner's Assignee, 76 Pa. 142), that the date of the delivery of a preferential instrument, rather than the date when it was put on record, marked the beginning of the four-months period, although even then cases were not wanting which held that the date of record was to be taken (In re Klingaman, 4 Am. Bankr. Rep. 254, 101 Fed. 691; Chesapeake Shoe Co. v. Seldner, 122 Fed. 593, 58 C. C. A. 261; Babbitt v. Kelley [Mo. Sup.] 9 Am. Bankr. Rep. 335, 70 S. W. 384; Mathews v. Hardt, 9 Am. Bankr. Rep. 373, 80 N. Y. Supp. 462; Johnston v. Huff, 13 Am. Bankr. Rep. 287, 133 Fed. 704, 66 C. C. A. 534). It also must be regarded as intended to bring the section where it is found into substantial accord with section 3, clauses "a" and "b," where after defining what shall constitute an act of bankruptcy, and providing that proceedings must be begun within four months after the commission by the bankrupt of the act relied upon, it is declared:

"Such time shall not expire until four months after the date of the recording or registering of the transfer or assignment, where the act consists in having made a transfer of any of his property with intent to hinder, delay or defraud his creditors, or for the purpose of giving a preference as hereinbefore provided, or a general assignment for the benefit of creditors; if by law such recording or registering is required or permitted; or, if it is not, from the date when the beneficiary takes notorious, exclusive or continuous possession of the property, unless the petitioning creditors have received actual notice of such transfer or assignment."

According to what is so provided, there would seem to be no question, that in this state, where a preferential or a fraudulent transfer which is relied upon as an act of bankruptcy consists in a conveyance of real estate, under which possession is not taken, and of which the petitioning creditors have no actual knowledge, it is not committed in legal intendment until the deed or other instrument by which it is accomplished is put on record. Notice is made essential, and where there is none in reality, according to the other alternative, it must be supplied constructively by recording. This is the effect of record by the state law, and is thus "required," within the meaning of this provision. Any other view makes it insensible and useless.

But whatever construction is thus given to the one section (section 3, cls. "a," "b") is necessarily carried forward and impressed upon the other (section 60a). The two are intimately related, the one in this particular being the basis of and dominating the other, and it is the failure to recognize this and to draw them together as they should be that is responsible for any misapprehension. What is thus "required" in the way of recording in the one is also "required" as a consequence in the other, and for the same purpose. It is true that some things are omitted in the transition, but enough is retained to make this manifest. It is none other, for instance, than the preference which is made an act of bankruptcy in the earlier section that is intended to be made voidable at the instance of the trustee in the interest of creditors in the later, and upon substantially the same terms; the superadded condition only being present that the person who received it had reasonable cause to believe that a preference was intended. In the present case the petitioning creditors could unquestionably have assigned as an act of bankruptcy the transfer of his property by the bankrupt to the defendant by the deeds in controversy; they having no knowledge of

them, and the deeds having been put on record within the four-months period. But, if so, how can the defendant successfully deny the effect of them as a preference in his hands? The character of the transaction as a preference does not change in the shifting of the issue from the bankrupt to the preferred creditor. It may, its voidable quality, dependent upon whether the creditor had reasonable cause to believe that a preference was intended. But that is another matter, and does not concern us, being unquestionably present here.

It seems to me, therefore, clear that, in any case where the facts are the same as they are here, a deed by which a transfer of a bankrupt's property is effected, and under which no possession is taken, is to be judged, on the question of preference, by the date when it is put on record, regardless of the date of delivery, and that, tested by this, the conveyances to the defendant cannot stand. I do not lose sight of the fact that the first of these was several years prior to the passage of the bankruptcy act, which is not to be given a retroactive effect, if it can be avoided. But the security thereby provided was a continuing one. It was not given merely for the debt then due, but also for whatever might subsequently become so; and it is safe to conclude that the original debt of $573 is long since paid, together with whatever after that antedated the passage of the act. Thereafter the defendant held his deeds subject to the condition there imposed, and at the risk, if not duly put on record, of having them declared void, as here, upon the intervention of bankruptcy within four months after they were. If the result seems in any respect harsh, it is to be remembered that by withholding them as he did, and allowing the bankrupt to remain in full possession and enjoyment of his property, the defendant enabled him to secure a false credit, which has worked fully as much injury to others entirely innocent.

The only doubt I have is raised by those cases which apparently hold that the right of the trustee to question such a conveyance is to be determined by the state law and what there obtains. Thompson v. Fairbanks, 196 U. S. 516, 25 Sup. Ct. 306, 49 L. Ed. 577; Humphrey v. Tatman, 198 U. S. 91, 25 Sup. Ct. 567, 49 L. Ed. 956; N. Y. Economical Printing Co., 6 Am. Bankr. Rep. 615, 110 Fed. 514, 49 C. C. A, 133; In re Shirley, 7 Am. Bankr. Rep. 299, 112 Fed. 301, 50 C. C. A. 252. But all of these will be found on examination to have arisen prior to the amendments of 1903, by which the clause with regard to recording was carried forward from the third section to the sixtieth, and do not assume to pass upon the act as it now stands. Neither do they consider the relation existing between the two sections named. Regarding them as in these respects distinguishable, I have ventured to follow what seems to me to be the natural and necessary construction to be given to this part of the act, upon which its efficiency in the matter of preferences, in my judgment, in large measure depends.

The question of the Plains township judgments remains. The assignment of these to the defendant is undoubtedly good as to the purchases which were made by the bankrupt on the strength of them, $275.07, and the only controversy is as to the disposition of the balance above that. This depends upon whether the judgments were bought

outright or were taken by the defendant as security only. Wheeler, who managed the affair for the defendant, says it was a purchase; but this is a mere conclusion, now, after the fact, when it is to his advantage to so hold, and the transaction as detailed by him shows otherwise. The truth is, nothing whatever was said upon the subject. According to the undisputed evidence, Mangan came and wanted goods, but was refused further credit, and then suggested that he had some Plains township judgments, which he would assign if they would let him have some. To this Wheeler replied that the judgments were problematical (being then the subject of litigation, which was not finally concluded until the decision of the Supreme Court a month later), and that he could not think of giving anything like their face value for them. It was, however, subsequently arranged that Mangan should be allowed to have some goods on them; the amount not being fixed. He was then sold a bill of $109.80; two days later, when he had executed an assignment of the judgments, he was sold another bill of $76.18; and on the day following, another of $35.35; and on the day after that, one of $53.74. This made a total of $275.07; the judgments, with costs, aggregating $567.37. Why the parties stopped at that particular amount is not shown. Possibly because Mangan was sold out the same afternoon at constable's sale, and bankruptcy proceedings were instituted a few days later. However that may be, the goods obtained were charged to Mangan, and, although this was by memorandum only and not in his regular account, I do not see how it can be reconciled with the idea of a sale of the judgment. Wheeler admits he cannot explain why this was done, but to my mind the explanation is not far to seek. If the decision of the Supreme Court in the pending appeal should happen to be adverse, the judgments would be worthless, and he evidently was not willing to take that risk. To meet this contingency, the charges were made and the account kept open. Whether my supposition be correct or not, that, at least, was what took place, and as an account it must therefore remain. Considering the fact that no definite price was agreed upon, and that Mangan was allowed to buy indefinitely against the judgments, and that what he bought was charged against him as a debt, as well as the whole course of the transaction, I conclude that the judgments were taken as security only, and that the defendant must account for all over and above the debt for which they stand. It is true that the transfer was absolute on its face, and that there was no agreement to reassign. But, while these are circumstances to be considered, they are not controlling, and are not sufficient in my judgment to overcome the others to which I have referred.

Let a decree be drawn in favor of the plaintiff in conformity with this opinion, with costs.